[Civil No. 4144. Filed July 14, 1939.]

[92 Pac. (2d) 527.]

ROY R. HISLOP, as City Manager of the City of Phoenix, a Municipal Corporation of the State of Arizona, E. C. MOORE, as Chief of Police of Said Municipal Corporation, and W. O. GLICK, as City Magistrate of Said Municipal Corporation, Petitioners, v. G. A. RODGERS, as Judge of the Superior Court of Maricopa County, State of Arizona, Respondent.

102

Mr. Hess Seaman, City Attorney, and Mr. William C. Fields, Assistant City Attorney, for Petitioners.

Messrs. Baker & Whitney, Mr. Lawrence L. Howe and Mr. Harold E. Whitney, for Respondent.

LOCKWOOD, J.—Roy R. Hislop, E. C. Moore and W. O. Glick, as city manager, chief of police and city magistrate, respectively, of the City of Phoenix, a municipal corporation, hereinafter called petitioners, filed an original application in this court for a writ of prohibition against G. A. RODGERS as a judge of the superior court of Maricopa county, hereinafter called respondent. An alternative writ was issued requiring the respondent to show cause why it should not be made permanent, and a response was duly made and the matter submitted to us upon the petition and the response.

As preliminary to a consideration of the case it is necessary that a statement of the material facts shown by the record be made. They are as follows.

J. F. Engle and Jack Showell on the 15th day of June, 1939, were engaged in business at 27 South Central Avenue, 213 North Central Avenue, and 32 East Monroe Street, in the City of Phoenix. On that date petitioner E. C. Moore filed his petition in the city court of the City of Phoenix, under the provisions of section 97 of ordinance 99 of said city, alleging that Engle and Showell were maintaining a public nuisance at each of the places above mentioned, and praying for the issuance of an order from the city court abating said nuisance. In pursuance thereof, and without notice to Engle and Showell, or without any opportunity on their part of being heard in opposition to the petition, W. O. Glick, as city magistrate of said court, issued an order abating the alleged nuisance maintained by Engle and Showell at the places aforesaid, and authorizing and directing the chief of police to do such acts as might be reasonably necessary to effect the abatement. Thereafter, and on the same day, in pursuance of said order, the chief of police padlocked the entrances to 27 South Central Avenue and 213 North Central Avenue, and left police guards at the entrance of 32 East Monroe Street, in order to stop the use of said premises for the doing of the acts which it was alleged were public nuisances. Thereafter, and on the 17th day of June, 1939, Engle and Showell filed a complaint in the superior court, setting forth the nature of the business which they alleged they were conducting at the places in question, together with many other matters which we shall refer to as may be necessary, and praying for a temporary restraining order forbidding the petitioners from interfering with the conduct of such business, and for a permanent injunction.

The temporary restraining order was issued, and thereafter petition was made to this court for a writ of prohibition, prohibiting the said G. A. RODGERS,

or any judge to whom he might transfer the injunction proceedings, from any further action therein.

It is the position of the petitioners that they are authorized, empowered and directed by law to summarily abate any public nuisance which may be existing within the City of Phoenix; that the business which Engle and Showell were carrying on was a public nuisance, and that under such circumstances, by the express provisions of section 4281, Revised Code of 1928, the superior courts of this state are without jurisdiction to enjoin them in the performance of their duty as officers of the law executing a public statute for the public benefit. This reads, so far as material, as follows:

*"In what cases not to be granted.* An injunction cannot be granted . . . to prevent the execution of a public statute, by officers of the law, for the public benefit; . . . "

 Prohibition is a legal remedy which this court is authorized by section 4, article 6 of the Constitution to issue in proper cases. It is defined as

"that process by which a superior court prevents inferior courts, tribunals, officers or persons from usurping or exercising a jurisdiction with which they have not been vested by law." 50 C. J., p. 654, and cases cited.

At common law it was a remedy against encroachment of jurisdiction, and in adopting the remedy our courts have almost universally preserved its original common-law nature, object and function. Generally it may not be invoked where the party has a proper remedy by appeal, nor used for the review or correction of mere errors committed by an inferior tribunal. *Bank of Arizona* v. *Superior Court,* 30 Ariz. 72, 245 Pac. 366.

There are two questions, therefore, for us to consider, (a) had the superior court of Maricopa County

jurisdiction to proceed in the matter concerning which the writ of prohibition is asked, and (b) even if it did not have jurisdiction, have the petitioners a sufficient remedy by appeal. We will consider these two questions in their order.

As preliminary thereto, we think it well to clarify the situation by calling attention to certain matters which have been discussed at length in respondent's brief, but which are not material to the present case. The question, as we have said, is one of jurisdiction and of jurisdiction *as fixed by the statute,* and not of whether Engle and Showell were in law and fact maintaining a nuisance, or whether petitioners acted improvidently in abating it as they did. If it were not for section 4281, *supra,* there can be no doubt that the superior court would have jurisdiction to issue an injunction if it was alleged that property rights were being irreparably injured by the attempt to enforce a statute against one who claimed he did not fall within its inhibition, even though we might hold on the facts the court abused its discretion in issuing it. The books are full of cases in which injunctive relief has been granted under such circumstances. But these cases invariably come from states where no such statute as 4281, *supra,* exists. Such cases, therefore, have no bearing on the situation which is before us. If that section is valid, then the question of whether an injunction may be issued in a case like the present one does not in any manner depend upon the rules of the common law or cases based thereon, but upon an interpretation of the statute, and that alone. And the question being one of jurisdiction, it is immaterial in the present case whether Engle and Showell were actually maintaining a nuisance or not. The question is not one of their guilt or innocence, but whether the particular remedy which they chose, to wit, that of an injunction forbidding the

officers to proceed in their conduct, was a remedy within the jurisdiction of the superior court to grant. For this reason, we confine ourselves to the questions of (1) is section 4281, *supra,* a constitutional exercise of power by the legislature, and (2) did the acts of the officers against whom the temporary restraining order was issued constitute an attempt by officers of the law to execute a public statute for the public benefit. If these two questions must be answered in the affirmative, the superior court was without jurisdiction and a writ of prohibition lies. We consider then whether section 4281, *supra,* is constitutional or not. This section was taken from section 3423 of the Civil Code of California, and its constitutionality has never been seriously questioned. So far as the particular portion of the section involved herein is concerned, the Supreme Court of that state in *Reclamation District No. 1500* v. *Superior Court,* 171 Cal. 672, 154 Pac. 845, 849, said:

" . . . For here, in the subdivision declaring that injunction does not lie to restrain the execution of a legislative act by public officials, we have the enunciation of an old and generally recognized rule of equity jurisdiction.

"This rule, like that of subdivision 7, which was involved in *Glide* v. *Superior Court, supra* [147 Cal. 21, 81 Pac. 225], has its underlying basis in the division of the activities of government into three separate and independent departments, each of which is, in the exercise of its own peculiar functions, free from the control of either of the others. 5 Pom. Eq. Jur. § 327. The power to enjoin officers from enforcing a statute, even where the statute was claimed to be unconstitutional has been denied in some cases. *Kneedler* v. *Lane,* 45 Pa. 238; *Thompson* v. *Com'rs,* 2 Abb. Prac. (N. Y.) 248. This court has not carried the doctrine so far. The prohibition against enjoining the execution of statutes has been held to apply only to valid statutes. *Wheeler* v. *Herbert,* 152 Cal. 224, 92 Pac. 353. But, at least as so limited, the rule is generally

recognized. In *So. Or. Co.* v. *Quine,* 70 Or. 63, 139 Pac. 332, the court said:

" 'We think the law is fixed beyond cavil that courts of equity have no power by injunction to restrain a public officer from performing an official act that he is required by valid law to perform. It is not sufficient to clothe the court with jurisdiction to say simply that, unless the court extends its restraining hand, hardships will follow, or irreparable damage will ensue, because the officer delegated to execute such law may act unwisely or injuriously to the party seeking relief. The acts must be such as are without the sanction of a sound law.'

"See, also, *So. Min. Co.* v. *Lowe,* 105 Ga. 352, 31 S. E. 191; *Mendenhall* v. *Denham,* 35 Fla. 250, 17 So. 561; *Sup. of Greenville* v. *Seymour,* 22 N. J. Eq. 458.''

In the very recent case of *Corbin* v. *Rodgers,* 53 Ariz. 35, 85 Pac. (2d) 59, 62, we had this section under consideration, and held as follows:

"In the present case, however, there is a jurisdictional reason why the injunction was improperly issued. Section 4281, Rev. Code 1928, reads, in part, as follows: 'In what cases not to be granted. An injunction cannot be granted . . . to prevent the execution of a public statute, by officers of the law, for the public benefit; . . . '

"This provision came into our law in 1913 as paragraph 1459, Civil Code, the Revised Statutes of that year, and was taken from subdivision 4 of section 3423 of the Civil Code of California. It had been interpreted by the supreme court of that state before its adoption by us, in the case of *Wheeler* v. *Herbert,* 152 Cal. 224, 92 Pac. 353, and this case has been followed consistently since in that state. *Reclamation Dist.* v. *Superior Court,* 171 Cal. 672, 154 Pac. 845; *State Board of Equalization* v. *Superior Court,* 5 Cal. App. (2d) 374, 42 Pac. (2d) 1076. In these cases the court states, in substance, that where the validity of the law whose execution it is sought to enjoin is not attacked, or when even though attacked, its validity is beyond question and the power of the officer to enforce it, if valid, is plain, the court has no jurisdiction to

issue an injunction restraining its enforcement by the proper officers.

"In the present case there is no attempt to attack the validity of article 9, chapter 104, *supra,* [R. C. 1928], and, indeed, the most cursory examination of the article shows it was well within the power of the legislature to enact, and that it was the mandatory duty of the county attorney and the sheriff to enforce it. Such being the fact, it was not merely an abuse of discretion to issue the temporary restraining order, for the reason that it did not appear that there was an invasion of property rights, within the meaning of *Bisbee* v. *Arizona Ins. Agency, supra* [14 Ariz. 313, 127 Pac. 722], but under the statute the superior court was without jurisdiction to issue an injunction in this character of a case."

If, then, the action of the petitioners was done in an attempt to enforce a valid public statute for the public benefit, the superior court of Maricopa county was entirely lacking in jurisdiction to entertain any proceeding requiring the issuance of a temporary restraining order or injunction of any nature whatever. Let us then consider whether the acts of petitioners fell within the terms of section 4281, *supra.* First, were they endeavoring to enforce a "public statute"? Section 408, Revised Code of 1928, reads, in part, as follows:

*"Enumeration of powers of cities.* In addition to the powers already vested in cities by their respective charters and by the general laws, cities and their common councils shall have the following powers: . . . 11. to define nuisances and abate the same; and to impose fines upon persons creating or continuing nuisances; . . . "

Subdivision 3 of chapter 4 of the charter of the City of Phoenix gives said commission, which is the legislative organ of said city by virtue of its charter, the power "(3) To provide for the summary abatement of any nuisances at the expense of the person or per-

sons creating, causing, committing or maintaining such nuisances.'' In pursuance of said powers, the said city commission adopted ordinance No. 99, section 97 (a) of which is in the following language:

''Anything which is obnoxious to health, or is indecent, or is offensive to the senses, or is an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property by any considerable number of persons, or unlawfully obstructs any public street, alley, sidewalk or highway is hereby declared a nuisance and may be abated by order of the City Court.''

It is by virtue of these provisions that petitioners claim to have acted. Is an attempt to enforce this ordinance an attempt to enforce a ''public statute'' within the meaning of section 4281, *supra*? The question of whether a municipal charter and ordinances adopted thereunder are included under the term ''statute'' has been before the courts a number of times. The Supreme Court of the United States, in the case of *King Mfg. Co.* v. *Augusta,* 277 U. S. 100, 48 Sup. Ct. 489, 490, 72 L. Ed. 801, had occasion to go into the question. It said:

''In usage, 'statute' is a term which has both a restricted and a broad signification. This is reflected in the following excerpt from Bouvier's Law Dictionary, Rawle's Revision:

'' 'Statute.—A law established by the act of the legislative power. An act of the Legislature. The written will of the Legislature, solemnly expressed according to the forms necessary to constitute it the law of the state. . . .

'' 'This word is used to designate the written law in contradistinction to the unwritten law.

'' 'Among the civilians, the term ''statute'' is generally applied to laws and regulations of every sort; every provision of law which ordains, permits, or prohibits anything is designated a statute, without considering from what source it arises.'

"It of course rests with each state to determine in what form and by what agencies its legislative power may be exerted. It may legislate little or much in its Constitution, may permit the electorate to make laws by direct vote, may intrust its Legislature with wide lawmaking functions, and may delegate legislative authority to subordinate agencies, such as municipal councils and state commissions.

"But whether this power be exerted in one form or another, or by one agency or another, the enactments put forth, whether called constitutional provisions, laws, ordinances, or orders are in essence legislative acts of the state; they express its will, and have no force otherwise. . . . "

And it was held that municipal ordinances were statutes within the meaning of the Judicial Code (28 U. S. C. A., § 344 (a) which gave jurisdiction to the federal courts:

"(2) 'Where is drawn in question, the validity of a *statute* of any state, on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of its validity.' " (Italics ours.)

In the case of *City of Rome* v. *Foot,* 175 App. Div. 459, 162 N. Y. Supp. 781, it was held that an ordinance adopted pursuant to sufficient legislative authority was a statute. In *Frick* v. *City of Los Angeles,* 115 Cal. 512, 47 Pac. 250, 251, it was said:

" . . . we are yet clearly of opinion that the charter, as an instrument of government, and in its political provisions, is a 'statute,' within the meaning of that section. It is undoubtedly a law, though of local operation. The constitution declares it to be the organic law of the city. Article 11, § 8. It is of course a written law, and for very many purposes the terms 'statute' and 'written law' are used indifferently. See And. Law Dict. tit. 'Statute'; 1 Bl. Comm. 85, 475."

In *Village of Winooski* v. *Gokey,* 49 Vt. 282, the court held, in passing upon a similar subject, that the

general tendency of modern decisions was to enlarge the class of laws referred to as public ones, and that municipal charters should be deemed public laws.

 The obvious purpose of the provision of section 4281, *supra,* under consideration was to prevent interference by the judicial branch of the government with the enforcement of laws by the executive branch through the use of the power of injunction. *Reclamation Dist.* v. *Superior Court, supra.* We are of the opinion that the legislature, in adopting the section, intended to include valid municipal ordinances adopted by authority of a legislative act under the term "public statutes." That the petitioners were "officers of the law," of course cannot be questioned, nor do we think a serious contention can be made that they were not endeavoring to enforce the ordinance "for the public benefit." If, therefore, the ordinance which they were attempting to enforce is a valid one, the superior court of Maricopa County was without jurisdiction to issue a temporary restraining order or writ of injunction. We consider, therefore, the validity of the ordinance.

 Primarily, even in the absence of statutes, it is within the power of municipal corporations to determine and declare what shall constitute a nuisance, and a large discretion rests in the municipal governing body in determining what these things are, but this power must be exercised reasonably and not arbitrarily, and a municipal corporation cannot make a thing a nuisance, which is not in truth one, merely by declaring it to be such. Its power is limited to such things as the common law declares to be nuisances. *Yates* v. *Milwaukee,* 10 Wall. 497, 19 L. Ed. 984; *Denver* v. *Mullen,* 7 Colo. 345, 3 Pac. 693; *Duncan Elec. etc. Co.* v. *Duncan,* 64 Okl. 211, 166 Pac. 1048. But in addition to this common law power, the legislature may authorize corporations to declare certain acts

to be nuisances to the same extent as the legislature itself could do. *Ex parte Lacey,* 108 Cal. 326, 41 Pac. 411, 49 Am. St. Rep. 93, 38 L. R. A. 640; *Beiling* v. *Evansville,* 144 Ind. 644, 42 N. E. 621, 35 L. R. A. 272; *Commonwealth* v. *Parks,* 155 Mass. 531, 30 N. E. 174; 43 C. J. 402, and cases cited.

 The power granted municipalities in section 408, *supra,* was, therefore, properly delegated and includes the right, on behalf of the city, both to declare what shall be a nuisance in accordance with the principles above set forth, and also to abate such nuisances. In addition thereto, the City of Phoenix is one of the home rule charter cities, authorized under section 2, article XIII of the Constitution, and its charter, duly approved by the governor, also provides that the City of Phoenix may provide for the summary abatement of nuisances by proper ordinance. The City of Phoenix has thus twice been specifically authorized by its charter to define nuisances and provide for their abatement. In exercising its power of determining what nuisances are, it has in substance followed the language used by the legislature in section 4693, Revised Code of 1928, in declaring what shall constitute a public nuisance, although the legislative enactment includes some things not specifically set forth in the city ordinance.

It is urged that the ordinance is invalid for the reason that the state has already covered the field of public nuisances by section 4693, *supra,* and that in the case of *Clayton* v. *State,* 38 Ariz. 135, 297 Pac. 1037, we have held that when a matter is one of state-wide public policy and concern and the state has covered the subject fully by legislation, the municipalities are without power to enact ordinances covering the same ground. It is true that we have laid down this general rule, but we have clarified and qualified it in the opinion on rehearing in the case just cited, in 38 Ariz. 466, 300 Pac. 1010. Therein we say:

"The requirement that drivers of motor vehicles be free from the influence of liquor and narcotics might be legally incorporated into the city's ordinances, notwithstanding it is a state law, if the charter or the general laws affecting the powers of cities authorized it. It is not a novelty in the law to find the same act punishable by statute and by city ordinance. Indeed it is quite common for the two jurisdictions to legislate concurrently on the same subject. Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city express power to legislate thereon, both jurisdictions may legislate on the same subject. Where, however, the subject is of state-wide concern, and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the state."

We have followed this rule in *City of Phoenix* v. *Breuninger*, 50 Ariz. 372, 72 Pac. (2d) 580, 583, holding in substance that where municipalities are given express power to legislate upon a certain subject, they may do so even though the same subject is covered by statewide law, " . . . provided, always, of course, that such legislation did not contradict some rule laid down by the state." In other words, the municipal legislation cannot contradict the state law, but it may parallel it, or even go beyond it, so long as the two are not in conflict. We think the ordinance in question is in no manner in conflict with section 4693, *supra,* and since it was enacted under the express powers granted the city in its charter, it is valid so far as its definition of a nuisance is concerned.

The next question is whether the method of abatement without notice or judicial hearing exercised by the municipal authorities was a constitutional one. The general rule laid down by practically all of the authorities in regard to the abatement of nuisances is stated as follows in 46 C. J., p. 755:

"(357) B. Summary Abatement–1. In General. The right of summary abatement of nuisances with-

out judicial process or proceeding was an established principle of the common law, and it has not been regarded as being abrogated by the provisions of constitutions for the protection of life, liberty, and property, although the exercise of the right might result in a destruction of property. The legislature may authorize the summary abatement of public nuisances. It is without the power of the legislature to authorize the summary destruction of property as a nuisance, which is not a nuisance *per se,* without notice or hearing. The remedy by summary abatement cannot be extended beyond the purpose implied in the words, and must be confined to doing what is necessary to accomplish it. In many cases a nuisance can be abated only by the destruction of the property in which it consists.''

The only limitation is that the thing abated must be, in fact, a nuisance, and while the party abating may be the judge in the first instance as to whether a nuisance actually exists, when he undertakes to abate it without legal proceeding, he acts at his peril and assumes all liability for exceeding his legal right. *People ex rel. Copcutt* v. *Board of Health of Yonkers,* 140 N. Y. 1, 35 N. E. 320, 37 Am. St. Rep. 522, 23 L. R. A. 481.

The question of whether an ordinance authorizing destruction of property violated the due process clause of the Constitution was before the Supreme Court of the United States in the case of *North American Cold Storage Co.* v. *Chicago,* 211 U. S. 306, 29 Sup. Ct. 101, 53 L. Ed. 195, 15 Ann. Cas. 276. The ordinance of the city of Chicago provided that it was the duty of the health department to enter upon any premises where food was kept which was unwholesome for human consumption and summarily seize, condemn and destroy such foods. The health authorities attempted to seize and destroy, without notice or judicial process, some food which was held by the North American Cold Storage Co. The company refused to deliver

up the food, on the ground that the ordinance which permitted its summary seizure and destruction violated the due process of law clause of the Federal Constitution, U. S. C. A., Constitution, Amendment 14. The court reviewed the many state decisions on the subject, and held that an ordinance authorizing the summary destruction of the property without a hearing was not void as denying due process of law, for the reason that the owner of the property was amply protected by the fact that he might, after the destruction, bring a suit for damages, and that if it appeared that the property destroyed did not, as a matter of fact, fall within the class whose destruction was legally authorized, he would be entitled to recover, and that this gave him the due process of law guaranteed by the Constitution.

The leading case in the United States on the subject of summary abatement of nuisances is that of *Lawton* v. *Steele,* 119 N. Y. 226, 23 N. E. 878, 879, 16 Am. St. Rep. 813, 7 L. R. A. 134, affirmed in 152 U. S. 133, 14 Sup. Ct. 499, 500, 38 L. Ed. 385. The legislature of the State of New York had adopted an act declaring certain fish nets to be public nuisances, and authorizing their abatement and summary destruction by any person, and making it the duty of certain public officials to seize and remove and forthwith destroy the same. The New York Court of Appeals said:

"The rights of summary abatement of nuisances, without judicial process or proceeding, was an established principle of the common law long before the adoption of our constitution, and it has never been supposed that this common-law principle was abrogated by the provision for the protection of life, liberty, and property in our State Constitution, although the exercise of the right might result in the destruction of property. . . . "

It then reviewed the cases and added:

" . . . But as the legislature may declare nuisances, it may also, where the nuisance is physical and tangible, direct its summary abatement by executive officers, without the intervention of judicial proceedings, in cases analogous to those where the remedy by summary abatement existed at common law.

" . . . The keeping of a bawdy-house, or a house for the resort of lewd and dissolute people, is a nuisance at common law. But the tearing down of the building so kept would not be justified as the exercise of the power of summary abatement, and it would add nothing, we think, to the justification, that a statute was produced authorizing the destruction of the building summarily as a part of the remedy. The nuisance consists in the case supposed in the conduct of the owner or occupants of the house in using or allowing it to be used for the immoral purpose, and the remedy would be to stop the use. This would be the only mode of abatement in such case known to the common law, and the destruction of the building for this purpose would have no sanction in common law or precedent. . . . "

The Supreme Court of the United States in affirming the decision used the following language:

"The extent and limits of what is known as the 'police power' have been a fruitful subject of discussion in the appellate courts of nearly every state in the Union. It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the state may order the destruction of a house falling to decay or otherwise endangering the lives of passers-by; the demolition of such as are in the path of a conflagration; the slaughter of diseased cattle; the destruction of decayed or unwholesome food; the prohibition of wooden buildings in cities; the regulation of railways and other means of public conveyance, and of interments in burial grounds; the restriction of objectionable trades to certain localities; the compulsory vaccination of children; the confinement of the insane or those afflicted with contagious

diseases; the restraint of vagrants, beggars, and habitual drunkards; the suppression of obscene publications and houses of ill fame; *and the prohibition of gambling houses* and places where intoxicating liquors are sold. . . .

. . . . . . . . . . .

"The main, and only real, difficulty connected with the act in question is in its declaration that any net, etc., maintained in violation of any law for the protection of fisheries, is to be treated as a public nuisance, 'and may be abated and summarily destroyed by any person, and it shall be the duty of each and every protector aforesaid and every game constable to seize, remove, and forthwith destroy the same.' The legislature, however, undoubtedly possessed the power not only to prohibit fishing by nets in these waters, but to make it a criminal offense, and to take such measures as were reasonable and necessary to prevent such offenses in the future. It certainly could not do this more effectually than by destroying the means of the offense. If the nets were being used in a manner detrimental to the interests of the public, we think it was within the power of the legislature to declare them to be nuisances, and to authorize the officers of the state to abate them. [Citing cases.] . . . While the legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and, if the object to be accomplished is conducive to the public interests, it may exercise a large liberty of choice in the means employed. [Citing cases.]

. . . . . . . . . . .

"So, the summary abatement of nuisances without judicial process or proceeding was well known to the common law long prior to the adoption of the constitution, and it has never been supposed that the constitutional provision in question in this case was intended to interfere with the established principles in that regard.

"Nor is a person whose property is seized under the act in question without his legal remedy. If in fact his property has been used in violation of the act, he has no just reason to complain; if not, he may replevy his nets from the officer seizing them, or, if

they have been destroyed, may have his action for their value. In such cases the burden would be upon the defendant to prove a justification under the statute. As was said by the supreme court of New Jersey in a similar case (*American Print Works* v. *Lawrence*, 21 N. J. Law 248, 259): 'The party is not, in point of fact, deprived of a trial by jury. The evidence necessary to sustain the defense is changed. Even if the party were deprived of a trial by jury, the statute is not, therefore, necessarily unconstitutional.' Indeed, it is scarcely possible that any actual injustice could be done in the practical administration of the act." (Italics ours.)

 The highest court of the land has thus declared emphatically that the summary abatement of an alleged nuisance, without notice of hearing, does not violate any constitutional provisions, since the party owning the property has a complete remedy by an action for damages against the person who has destroyed the property, in case no nuisance actually existed.

 Since the ordinance in question was undoubtedly a constitutional and valid one, and since the petitioners were attempting to enforce it in a manner authorized by law, injunctive process was not available in order to prevent their acts. The remedy, if there be one, is by an action for damages. If the liberty of any person has been restrained unlawfully for violation of the ordinance, the right of *habeas corpus* is always available. The law is summed up succinctly and correctly in the case of *Mayor of City of Americus* v. *Mitchell*, 79 Ga. 807, 5 S. E. 201, 202, as follows:

"1. We think the court erred in granting the injunction, for two reasons: Under the charter and ordinances of the city of Americus, the mayor and council, upon the recommendation of the board of health, has full power in a summary manner to abate nuisances. It is for the mayor and council to determine, upon the report of the board of health, whether it is

a nuisance or not; and if they came to the conclusion that the mill-pond was a nuisance which affected the health of the community, they had a right to abate it in a summary manner. Whenever the city authorities proceed in the summary manner authorized by their charter, they do so at their peril. The owner of the pond in this case would not have been remediless at law. He would have had a right, in a suit at law, to establish, if he could, that the pond was not a nuisance; and if he could show that to the satisfaction of the jury, he would be entitled to such damages as he had sustained by the summary action of the city authorities. It would be a great wrong upon the people living in crowded cities to hold that, in every case of nuisance, affecting perhaps the lives of hundreds or thousands of the inhabitants, the city authorities would have to go through a long and tedious trial before a court and jury before they could abate or abolish the nuisance. But, as said before, when they do act, they must be certain that they are right, and that the thing abated is a nuisance, or they will subject the municipality to damages.''

But it may be said, even though the superior court was without jurisdiction to issue an injunction, it is discretionary with this court as to whether a writ of prohibition should be granted, particularly when it appears that the complaining parties have an adequate remedy by appeal, and that the equities are such that an injustice will be done by granting it. *Van Dyke* v. *Gila County,* 24 Ariz. 508, 211 Pac. 576. This is true, and it may, therefore, be necessary for us to determine not only that the superior court was lacking in jurisdiction to issue the injunction sought, but whether the petitioners had an adequate remedy by appeal, and if an injustice will be done if we issue the writ.

So far as appeal is concerned, we think it apparent that it is not an adequate remedy. If a nuisance is being maintained, the slow and tedious process of appeal necessarily means that if an injunction

is granted, even though we should later hold it was an abuse of discretion or done without jurisdiction, the nuisance will continue for months. To say that an appeal is an adequate remedy under such circumstances is absurd. Of all things that require prompt action, nuisances stand among the very first. This is why the law permits, as it does in no other class of cases, a summary abatement.

But it may be urged the petitioners acted arbitrarily in closing the places of business of Engle and Showell without notice and hearing, and for that reason we should exercise our discretion by refusing to issue the writ. We think such a contention is not only without merit, but is frivolous in its nature. This court takes judicial notice of the records of its previous cases. Taking them into consideration, together with the pleadings filed in the action in the superior court against which prohibition is sought, there is strong ground for belief, if not conclusive evidence thereof, that the parties who applied for the injunctive relief are attempting under color of law to violate the principles laid down unmistakably by this court in previous cases, without any legal justification therefor, and to defeat, or at least delay, the attempts of the public authorities of the City of Phoenix to enforce the law which this court has previously declared. While this attempt does not go to the extent of that in the case of *State* v. *Superior Court,* 22 Ariz. 452, 197 Pac. 537, so that the parties thereto would be liable in contempt proceedings, we think they are not in a position to claim that the equities are with them to such an extent that they may urge them as a reason for this court refusing to prohibit the superior court from aiding their efforts by an illegal attempt to take jurisdiction under circumstances where the law denies it.

Since the superior court of Maricopa County acted in excess of its jurisdiction in entertaining the appli-

cation for injunction, and since petitioners have no other complete and adequate remedy available than the writ of prohibition, and since the records of this court show affirmatively that there are no equities existing requiring the court to exercise its discretion and refrain from issuing the writ, the alternative writ of prohibition heretofore issued is made permanent.

ROSS, C. J., and McALISTER, J., concur.