507 P.2d 971

**Paul N. MARSTON, Maricopa County Recorder, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARICOPA, and the Honorable Ed W. Hughes, a Judge thereof; Harry Craig, Chairman of the Democratic Central Committee, and Barbara Perry, et al., Respondents.**

**No. 11170.**

Supreme Court of Arizona,
In Banc.

March 23, 1973.

Evans, Kitchel & Jenckes, by David Wm. West, Phoenix, for petitioner.

Gorey & Ely, by Herbert L. Ely, Harrison, Myers & Singer, by Mark I. Harrison, Phoenix, for respondents.

HOLOHAN, Justice.

The petitioner, the County Recorder of Maricopa County, sought by this special action to set aside the judgment and order of the Superior Court of Maricopa County by which order petitioner was directed to appoint a group of persons as deputy registrars whose names had been submitted by the respondent Harry Craig, Chairman of the Democratic Central Committee of Mar-

icopa County. In addition, the order of the superior court directed that the petitioner in the future appoint all persons as deputy registrars whose names were submitted to him by respondent Craig in his capacity as Demoncratic County Chairman.

Because of the importance of a speedy resolution of the issues involved in this case and because of the important area of public concern for the proper registration of voters we accepted jurisdiction of this special action.

Since the beginning of the current year the petitioner has refused to appoint any person as deputy registrar unless the person first passed an examination which is devised and given by petitioner. The examination is described by the petitioner as necessary to test the knowledge and competency of persons to act as deputy registrars. The petitioner argues that the registration of voters is dependent upon the accuracy and competency with which the deputy registrars act in filling out the voter registration forms. The respondent Craig as Chairman of the Democratic Central Committee of Maricopa County together with another person filed an action against the petitioner seeking to enjoin his administration of the test for deputy registrars and for an order directing the petitioner to appoint as deputy registrars the persons on the list submitted to petitioner by respondent Craig pursuant to A.R.S. § 16–141, subsecs, A and B. The matter was heard by the superior court, and judgment was given which ordered petitioner to appoint those persons deputy registrars whose names were on the list submitted by respondent Craig and further ordering that in the future all names on lists submitted by respondent Craig for appointment as deputy registrars be appointed as such by petitioner. The superior court ruled that the petitioner does not have the authority to require that persons nominated as deputy registrars pass the test devised by petitioner.

■ The petitioner as a public officer may not be enjoined from performing his official acts except in instances in which he is acting illegally or in excess of the powers conferred upon him by law. State ex rel. Berger v. Myers, 108 Ariz. 248, 495 P.2d 844 (1972); Hunt v. Superior Court, 64 Ariz. 325, 170 P.2d 293 (1946); Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527 (1939). Pursuant to Article 12, Section 4, of the Constitution of Arizona, A.R.S., the duties and powers of the county recorder are limited to those prescribed by law. The power of the county recorder to appoint deputy registrars is found in A.R.S. § 16–141. A resolution of the controversy in this case depends upon the interpretation of that statute. The parties are in agreement that the statute gives to the county chairmen of the political parties the authority to nominate persons for appointment as deputy registrars, but the power of appointment rests with the county recorder. The area of controversy exists primarily in the interpretation of subsection E of the statute. The respondent Craig points out that subsection C of A.R.S. § 16–141 provides:

"C. Deputy registrars shall be qualified electors of the precinct for which they are appointed, shall have a fixed office, place of business or residence, shall be qualified to take acknowledgments of affidavits of registration, and may take registrations in and for any precinct in the county. No person who is a public officer or a candidate for office, other than a candidate for the office of precinct committeeman, shall be appointed a deputy registrar. Deputy registrars shall serve without pay."

He argues that the only qualifications required of a deputy registrar are those contained in the above section, and if a person has such qualifications, the recorder must appoint the person.

The petitioner disagrees and cites as his authority subsection E of A.R.S. § 16–141:

"E. Nothing in this section shall prevent a county recorder from refusing for just cause to appoint, or removing for just cause, a deputy registrar."

Petitioner argues that the subsection provides that he may refuse to appoint a deputy registrar if he has just cause to refuse the appointment. The petitioner reasons that it is necessary for him to test the knowledge and ability of persons nominated to be deputy registrars before he can determine whether there is just cause to refuse the appointment. Implicit in his argument is the position that one who cannot perform the functions of a deputy registrar is part of the "just cause" for refusing to appoint. The position of the petitioner is certainly reasonable, but the question is, does the statute confer upon him the authority which he seeks to assume?

■ The legislature has not seen fit to provide for a method of testing persons before they assume the duties of deputy registrars. The legislature has set forth a system which provides for nominations from the county chairmen of the political parties, the qualifications for deputy registrars and appointment by the county recorder unless the county recorder has "just cause" to refuse the appointment. The "just cause" contemplated by the statute is more comprehensive than merely lack of qualifications as described in subsection C, and, to this extent, we disagree with the interpretation suggested by respondent Craig. In order to give full meaning to the wording of subsection E we believe that the section confers upon the county recorder the authority to refuse to appoint an otherwise qualified person on other grounds, to-wit: just cause. In the context of subsection E "just cause" is synonymous with good cause, that is, a good reason for not appointing, and we do not propose to list all the matters which might constitute just cause. The "just cause" must, however, be asserted at the time of the refusal to make the appointment. The statute does not confer upon the county recorder the power to delay an appointment while he searches for possible just cause, nor does the statute permit the appointment to be delayed for the purpose of education and testing. In the instant case we have no hesitation in saying that the delay has been unreasonable. The statute does give the county recorder the power to refuse to appoint if at the time of submission of a person for appointment the county recorder knows of a good and sufficient reason to refuse the appointment. The burden always rests upon the county recorder to prove the "just cause" if the failure to appoint is later challenged in any court proceedings. The public expects the county recorder to exercise mature judgment and act in a reasonable manner upon the facts known by him.

Once a deputy registrar is appointed subsection E gives to the county recorder the power to remove such a deputy registrar—again for just cause. The legislature has set up a system which provides that the county recorder may decline an appointment if he knows a good reason why the person should not serve, and the statute further provides that even if a person is appointed that he or she may be removed by the county recorder if by their actions in performance of their duties they give the county recorder good cause for removal. Petitioner may feel his system is better, but it is for the legislature to change the law—not petitioner nor this court.

The judgment of the trial court went too far. The superior court was correct in holding that the county recorder may not require a person nominated as deputy registrar to pass an examination, but the county recorder may refuse to appoint when there exists good cause. Since petitioner's refusal to appoint was based on his requirement that a person pass an examination, there may be some argument as to whether or not the county recorder actually has just cause for refusing to appoint any specific person or persons named on the list submitted by the respondent Craig in his capacity as Democratic County Chairman. We believe that the petitioner must have the opportunity to exercise the discretion given to him by subsection E of A.R.S. § 16–141. In the instant case, this should not require any delay, and the petitioner should be prepared to act forthwith

**212**

because petitioner may later remove from the list if just cause subsequently appears.

In the same sense the order of the superior court which directs the petitioner to make future appointments from lists submitted by the respondent Craig is too broad in that, again, it does not allow the recorder to exercise his statutory discretion.

The judgment and order of the superior court is directed to be modified in accordance with the views expressed in this opinion. Due to the need for prompt action in this matter, the mandate shall issue forthwith.

HAYS, C. J., and STRUCKMEYER, and LOCKWOOD, JJ., concur.

CAMERON, Vice Chief Justice (specially concurring).

I regret that I cannot agree with the language used by the majority opinion in this case.

I do not believe that the appointment of the deputy registrars is as "automatic" as the majority would suggest. I believe that the statute allows the county recorder a reasonable time to determine not only the qualifications as set forth in subsection C of § 16–141, A.R.S., but under subsection E matters which would constitute "just cause" for refusing to appoint.

We are concerned not only with the rights of the potential deputy registrars, but with the rights of individual citizens who will register to vote with the proposed deputy registrars and who are entitled to have their registration properly processed. The language used by the majority would severely restrict the right of the county recorder to protect from defective registrations by incompetent deputy registrars the registration rolls with a resulting damage to the integrity of our registration process.

While I agree that the statute does not contemplate a test as devised by the recorder, I believe he should have a reasonable time in which to determine whether or not there is just cause to refuse the appointment of a particular deputy registrar.