[Civil No. 2509.   Filed April 13, 1926.]

[245 Pac. 366.]

BANK OF ARIZONA, a Corporation, GRANVILLE FAIN and W. WILKINS, Copartners Doing Business Under the Name and Style of FAIN & WILKINS, Relators, v. THE SUPERIOR COURT OF YAVAPAI COUNTY, STATE OF ARIZONA, and DUDLEY W. WINDES, Judge of the Superior Court of Maricopa County, Acting as Judge of the Superior Court of Yavapai County, State of Arizona, Respondents.

1. PROHIBITION—FUNCTION OF "WRIT OF PROHIBITION" IS LIMITED TO FORBIDDING COURT FROM PROCEEDING IN MATTER OVER WHICH IT HAS NO JURISDICTION OR FROM EXERCISE OF EXCESS OF JURISDICTION.—The function of "writ of prohibition" is limited to forbidding and prohibiting a court from proceeding in a matter over which it has no jurisdiction or from exercise of an excess of jurisdiction.

2. PROHIBITION.—Generally, prohibition may not be invoked where party has remedy by appeal, nor to review and correct errors, committed by an inferior tribunal.

3. PROHIBITION—AS RESPECTS RIGHT TO WRIT OF PROHIBITION, COURT HELD NOT TO HAVE EXCEEDED ITS JURISDICTION IN RESTRAINING BANK FROM COLLECTING UNSATISFIED JUDGMENT AND MORTGAGE, IN VIEW OF CONTRACT BETWEEN BANK AND JUDGMENT DEBTORS.— Where bank, holding an unsatisfied judgment and mortgage, entered into a contract, purpose of which was to permit judgment debtors to work out of their financial difficulties, *held* that, in action against bank and others for breach of such contract, by failure to aid or co-operate with judgment debtors, and for receivership, court did not exceed its jurisdiction so as to justify prohibition in restraining bank from collecting judgments or mortgage pending litigation.

4. ACTION.—It is permissible for complaint to ask for both legal and equitable relief.

1.  See 22 R. C. L. 4.
2.  See 22 R. C. L. 9.
4.  See 1 R. C. L. 333.

5. INJUNCTION—GIVING OF STATUTORY BOND HELD NOT NECESSARY TO RENDER INJUNCTION AGAINST COLLECTION OF JUDGMENT EFFECTIVE, WHERE IT ONLY PROHIBITED VIOLATION OF CONTRACT.—Where court, in issuing interlocutory injunction preventing bank from collecting judgment, was only prohibiting it from violating a contract made subsequent to recovery of judgment, giving of statutory bond was not necessary.

6. APPEAL AND ERROR.—Under Civil Code of 1913, paragraph 1227, appeal may be taken from an interlocutory injunction.

See (1, 2) 32 Cyc., p. 604, n. 32, p. 617, n. 18, 19. (3) 32 Cyc., p. 605, n. 34. (4) 1 C. J., p. 1050, n. 51. (5) 32 C. J., p. 310, n. 8. (6) 3 C. J., p. 561, n. 9.

Original proceeding for Writ of Prohibition. Alternative writ granted. Upon hearing to determine whether writ should be made absolute, writ quashed.

Messrs. Favour & Baker and Messrs. O'Sullivan & Morgan, for Relators.

Messrs. Armstrong, Lewis & Kramer, for Respondents.

PER CURIAM.—This is an original proceeding for a writ of prohibition directed to the Honorable DUDLEY W. WINDES, Judge of the superior court of Maricopa county, while presiding over the superior court of Yavapai county in the trial of an action numbered 9900, entitled "Diamond and a Half Land & Cattle Company, a Corporation, Plaintiff, v. Bank of Arizona, a Corporation, Granville Fain and W. Wilkins, copartners, Doing Business Under the Name and Style of Fain & Wilkins, Defendants."

It appears that Charles P. Mullen and Guy P. Schultz, stock growers, with cattle and ranges and lands situate in Yavapai county, Arizona, alleged to be worth to exceed $200,000, were largely indebted to the Bank of Arizona; such indebtedness being represented in part by a partially satisfied mortgage lien

judgment and by a mortgage against and upon the debtors' cow outfit and ranges, including patented lands, and leases of state lands.

On the fifteenth day of November, 1922, the bank, as first party, Granville Fain and William Wilkins, as second parties, and Charles P. Mullen and Guy P. Schultz, as third parties, entered into an agreement concerning such indebtedness and property, all of said covenants and agreements being mutual, in effect as follows: The bank agreed to sell and Fain and Wilkins agreed to buy the debt owing the bank by Mullen and Schultz, for the consideration of $125,000, plus costs of an action of foreclosure and receivership amounting to $3,804.76, and to assign the unsatisfied judgment and mortgage to Fain & Wilkins, retaining, however, judgment and mortgage as security for the payment of the consideration above stated and until it was paid. In said agreement Fain & Wilkins optioned said unsatisfied judgment and mortgage to the judgment debtors, Mullen and Schultz, for $125,000, plus expenses of foreclosure and receivership, with interest thereon at six per cent and for operating expenses of outfit, with interest on latter amounts at eight per cent due credit to be given Mullen and Schultz for any sales of livestock made during the term of three years said option was to run. In said agreement Mullen and Schultz appointed and designated Fain & Wilkins as their attorneys in fact, for them, and in their name, place, and stead to manage, run, operate and control the cow outfit and real estate; it being recited that such appointment was coupled with an interest and irrevocable. The following paragraphs of the agreement we set out in full:

"(9) It is further understood and agreed that one of the purposes of this agreement is to allow and permit and help the third parties to work out of their

present financial difficulties, to the end that they may eventually own the said Diamond and a Half cattle outfit, and that, in the event they do, within the said period of three years, exercise the option herein provided for and pay the above-mentioned sum of money to the second parties, then the first parties agree to release and satisfy the said Stephens mortgages and the unsatisfied judgment it will hold and own against said third parties, and the said second parties agree to give up, release, and relinquish their power of attorney and the management and control of the said Diamond and a Half outfit.

"(10) It is understood and agreed that between the parties hereto time is of the essence of this agreement, and that this option herein provided for shall expire three years from date hereof, and that upon the expiration of the said time without the third parties having exercised their option, and paid the sum provided for herein, the said second parties may forthwith advertise and sell said property under the unsatisfied judgment, and, if they deem it advisable, also proceed to the foreclosure of the said real and chattel mortgages known as the Stephens mortgages, or take such further or other action as may be advisable to obtain title in fee and unincumbered, and said second parties shall not be required to render any account to the third parties for the operation of the outfit aforesaid.

"(11) It is further understood and agreed that between the several parties hereto there shall be an endeavor to carry out, not only the letter, but the spirit of this agreement, and that they will co-operate with each other in the fulfillment of this contract. . . .

"(14) The second parties, in acting under the power of attorney herein provided, and in the control and management of the said cattle outfit, shall not be liable to the third parties except for gross mismanagement and willful neglect. And it is understood and agreed that the first party, upon sale of the various properties herein provided for to the second parties, shall have no ownership therein, and that this agreement contemplates an outright sale as between

the first parties and the second parties and does not contemplate or constitute any agency, and that the first party shall not be liable for any act or deed of any other party hereto.''

The other provisions of the contract are unnecessary for the purposes of this case, and we do not set them out.

Some time before April, 1925, the Diamond and a Half Land & Cattle Company, a corporation was organized for the purpose of taking over, and did take over, the Mullen and Schultz interest in the cow outfit and lands covered by said agreement, and, as the successor of Mullen and Schultz instituted said action numbered 9900, charging the defendants therein with several breaches of the contract, bad faith in refusing to aid Mullen and Schultz to work out of their financial difficulties, or to co-operate with them in carrying out the spirit of the agreement, to the plaintiff's damage in the sum of $100,000. In the action, the appointment of a receiver was asked for to take charge of the cow outfit and to carry out, under the directions of the court, the terms of the agreement of November 15, 1922. Specific acts of failure on the part of the defendants to co-operate with and aid the plaintiff and its assignors in carrying out said contract, as also facts showing the need of the court's exercising its equity jurisdiction to protect plaintiff's interests and to prevent its losing the cow outfit and other property, and an offer on the part of plaintiff to perform its part of the agreement if given time and opportunity, were set forth.

The case was tried before the court and a jury, and the jury, in answer to interrogatories, found that Fain & Wilkins had been guilty of gross mismanagement and wilful neglect in running, operating and controlling cow outfit, to the injury and damage of plaintiff in the sum of $50,000, and had butchered and

converted cattle of plaintiff's assignors to the value of $360. The court adopted such findings except as to the amount of damages, these being reduced to $23,242. The court made additional findings to the effect that Fain & Wilkins were the attorneys-in-fact of plaintiff's assignors, to operate, run and control cow outfit and real estate coupled with an interest; that they had failed and neglected to perform the contract of November 15, 1922; that on September 21, 1925, there was due on the option $145,518.27, and that plaintiff was entitled to credit thereon in the sum of $23,242, together with such amounts as Fain & Wilkins may have received on account of sales of cattle after that date, the said credit of $23,242 to be limited to any interest Fain & Wilkins may have in said outfit and real property after the deficiency judgment and mortgage have been paid; that the bank was not a party to the neglect and mismanagement of cattle, and was not liable therefor; that it holds, and has held at all times, as security for its claim against Mullen and Schultz, the mortgage and deficiency judgment mentioned in contract, such debt being $125,000, plus costs and expenses of a certain suit amounting to $3,804.76, being the price for which said mortgage and deficiency judgment was sold by the bank to Fain & Wilkins; that the $225,000 is now due and owing bank; that time was of the essence of the contract, and that the bank's duty was to accept payment thereof and release and satisfy judgment and note; that to carry out contract a receiver should be appointed to do and perform that which Fain & Wilkins should have done, and that the time for the performance of such contract should be extended to December 1, 1926.

Judgment followed the findings, and in it a receiver was appointed to take charge of the property and to

manage and sell it under the directions and orders of the court for the purpose of paying off the indebtedness, but requiring such receiver to execute to relators herein a bond in the sum of $25,000 before making any sales of property. The bank was enjoined from taking any steps to collect its debt by execution on judgment or by suit on mortgage, and from assigning, transferring or encumbering the said mortgage. The court designates the decree as "interlocutory," and reserves the right to vacate, set aside and modify it at any time upon notice to all of the parties thereto.

The relators seek by this proceeding to have this court prohibit the trial judge, Honorable DUDLEY W. WINDES, before whom the case was tried, from proceeding to enter or enforce, and from proceeding in any of the matters connected with the entering or enforcement of, the said interlocutory decree, and especially from enjoining the relator Bank of Arizona without requiring the bond demanded by statute and equity, from proceeding upon its right as mortgagee and as the holder of a valid and subsisting judgment.

Upon the filing of the petition, an alternative writ was issued, and on return day respondents answered by motion to quash the alternative writ on the ground that the facts stated in petition did not warrant its issuance, demurred on the ground that the facts set out in petition were not sufficient to warrant the issuance of such writ, and denied, admitted, and alleged certain matters and things going to the merits of the petition. After oral argument, briefs were filed, and the case submitted.

The function of the writ of prohibition is limited to forbidding and prohibiting a court from proceeding in a matter over which it has no jurisdiction, or from the exercise of an excess of jurisdiction, and

generally it may not be invoked where the party has a remedy by appeal, nor be used for the review and correction of errors committed by an inferior tribunal. *Van Dyke* v. *Superior Court,* 24 Ariz. 508, 211 Pac. 576; *Walker* v. *Superior Court,* 4 Ariz. 249, 35 Pac. 982; *Miller* v. *Superior Court,* 21 Ariz. 61, 185 Pac. 357.

We believe it is conceded that in the proceeding sought to be prohibited the court had jurisdiction of the parties and of the subject matter, but it is claimed it exceeded its jurisdiction in enjoining the bank from taking any steps towards the collection of the deficiency judgment and mortgage. Whether such act by the court was in excess of its jurisdiction is the question. The basis of the action was the contract of November 15, 1922. The evident purpose of the suit was, not only to recover damages for the breach of this tripartite agreement, but to show the court that defendants, by their wrongful conduct in managing plaintiff's property, had made it impossible for plaintiff to liquidate the Mullen and Schultz indebtedness to the bank within the stipulated three years, and to invoke the chancery powers of the court for protection. According to the court's findings, the plaintiff was successful in this effort, at least so far as Fain & Wilkins were concerned. When we consider that the declared purpose of such agreement was not only to realize for the bank what was owing to it from Mullen and Schultz, but "to allow, permit, and help the third parties" (Mullen and Schultz) to work out of their present financial difficulties and own their property free from encumbrances, and to that end the parties "agreed that, between the several parties hereto, there shall be an endeavor to carry out, not only the letter, but the spirit of this agreement, and that they will cooperate with each other in the fulfill-

ment of this contract," it would seem the bank had committed its rights to a fair, honest and faithful effort to an accomplishment of the intended purpose.

The complaint asked for both legal and equitable relief, which is permissible under our practice. It sought damages for the breaches of the contract, and permission to have done under the direction of the court what, the plaintiff asserts, could have been done if defendants had co-operated with plaintiff as they agreed to do under the contract.

Whether the court was correct in its conclusion or not, the question, as to whether the Bank of Arizona by entering into said agreement was bound to await an honest effort thereunder to work out the results contemplated, was fairly within the issues and competent for the court to pass upon. Of course the reason for the entry of the interlocutory injunction, restraining the bank from proceeding to collect the deficiency judgment and mortgage, was to hold the subject matter of the lawsuit *in statu quo* pending the determination of the litigation, and to the end that plaintiff, if successful, might not only preserve its rights and secure some benefit from the contract, but, at the same time, guard and protect the interests of the bank. We see no reason why such an order could not be made by the court in the exercise of its equity powers.

The relators' contention that, since the injunction had the effect of suspending the collection of the bank's judgment, it could be effective for no purpose unless the statutory bond was given, is without merit for this reason: The court's jurisdiction to issue the injunction is found in the terms of the contract executed by all the parties, and the court in entering such order, was only prohibiting the parties from violating the terms of the contract.

Although relators do not make it a ground of their petition for the writ, they now complain that the court, in extending the time for the performance of the contract to December 1, 1926, in effect made a new contract for the parties, and thereby exceeded its jurisdiction. In the first place, if it be true the court had no right to extend the time, it would only be an erroneous exercise of jurisdiction, and, in the second place, whether the court had the right and power to give such extension would depend upon whether the defendants by their conduct prevented its performance by plaintiff by failing to co-operate as they had agreed to do. If it was defendants' fault that the contract was not performed within the stipulated time, they would not be allowed to take advantage of it.

We do not undertake to review the judgment or proceedings or to intimate any opinion concerning the correctness of the court's action. If the matter is brought here on appeal, and we have no doubt of the right of appeal from the interlocutory injunction (paragraph 1227, Civil Code 1913; *Davies* v. *Johnson,* 22 Ariz. 63, 193 Pac. 1019), it will be time enough to pass on the various questions then presented.

We are of the opinion that the action of the court complained of was not in excess of its jurisdiction; that therefore the alternative writ should be quashed. It is so ordered.