[Civil No. 4526.  Filed May 24, 1943.]

[137 Pac. (2d) 783.]

THE CITY OF PHOENIX, a municipal corporation; REED SHUPE, as Mayor of said City of Phoenix; M. F. WHARTON, HOUSTON L. WALSH, W. J. R. SIMS and J. R. FLEMING, as Commissioners of said City of Phoenix; DONALD C. SCOTT, as City Manager of said City of Phoenix, Appellants, v. THE STATE OF ARIZONA, at the relation of RICHARD F. HARLESS, County Attorney of Maricopa County, Appellee.

Mr. Hess Seaman, City Attorney, and Mr. William C. Fields, Assistant City Attorney, for Appellants.

Mr. Ross F. Jones, Mr. Wilmot W. Trew, Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, Deputy County Attorney, for Appellee.

McALISTER, C. J.—This is an action in *quo warranto* by the county attorney of Maricopa County

questioning the validity of Ordinance No. 2817 passed by the commission of the City of Phoenix annexing to the city what is known as the Grand Avenue Addition.

A petition signed by what purported to be more than half of the owners of the taxable property situated in blocks 7, 12, 13, 17, 18, 23 and 24 of Grand Avenue Addition to the City of Phoenix, asking that this addition be annexed to the city, was filed with the city commission and on October 13, 1938, the commission made an order annexing it. The county attorney did not file the complaint in *quo warranto* voluntarily, but only after he was directed to do so as the result of a *mandamus* proceeding.

The parties stipulated that the property embraced within the district in 1938 was assessed at a total valuation of $53,225; that lots 1, 3, 5, 7, 9, 11, 13, 15, 17, 19 and 21 in Block 23, assessed at $1,295, item 2 of the stipulation was church property and this, not being taxable, left a total valuation of $51,930, one-half of which was $25,965, which had to be represented on the petition. The question is: Did the owners of property valued at $25,965 sign the petition?

The parties stipulated further that when the petition was signed and presented to the commission in 1938, 36 items of real estate situated in the Grand Avenue Addition, several of these items being composed of more than one lot belonging to the same person or persons, were signed in the manner indicated therein and the property assessed by the county assessor of Maricopa County as shown by the stipulation.

According to the stipulation 9 of these items, 1, 4, 12, 14, 19, 20, 21, 34 and 36, totaling $12,875, were not questioned by either side; both admitted them to be correct.

The stipulation discloses that items 8, 17, 27, 29, 32 and 33, totaling $2,505, represented community property which had been signed for by the husband only. The court held that the signing of an annexation petition constituted a "conveyance and incumbrance" within the meaning of section 71–409, Arizona Code 1939, and consequently that both husband and wife must join in the petition. The pertinent part of this section reads:

" . . . A conveyance or incumbrance of the community property shall not be valid unless executed and acknowledged by both the husband and wife, except unpatented mining claims which may be conveyed or incumbered by the one having the title or right of possession without the other spouse joining in such conveyance or incumbrance."

It is our view that the signing of an annexation petition is not a conveyance or incumbrance within the meaning of this statute, but merely the expression of a willingness that the property become a part of the city, and the fact that thereafter the property will be subjected to the burden of taxation does not make the signing of the petition a "conveyance or incumbrance." In *Territory of Arizona* v. *Town of Jerome,* 7 Ariz. 320, 64 Pac. 417, 419, the court said:

" . . . The incorporation of a municipal body, a village, a town, or a city has never been regarded as imposing taxes upon people, in the sense of taking property for a public use or taking property without due process of law, if all parties were not notified by publication or otherwise. They are different from the private *or quasi* public corporations which have for their purpose the levying of taxes to create an improvement for the benefit of the property of those who reside within the limits of a certain district, and the rule which pertains to legislative acts creating such districts has no application to municipal corporations. . . . "

In *Morse* v. *City of Omaha*, 67 Neb. 426, 93 N.W. 734, 735, the husband alone signed a petition to include the homestead in a paving district. The statute invoked provided:

"No repaving shall be ordered except upon the petition of the owners of the majority of the taxable front feet in any improvement district."

Under a provision that "no conveyance or incumbrance of a homestead is valid unless in its execution and acknowledgment both husband and wife join" the Nebraska Supreme Court held that the signature of the husband bound the homestead and that the execution of the petition was not a conveyance or incumbrance.

In 31 Corpus Juris 82, § 1175, the law on this subject is stated as follows:

"The husband is the head and master of the community. As such he has the general management and control of all the property of the community, whether personal or real, and whether standing in his name or that of his wife. In the exercise of his control and management, the husband may contract community debts, . . . . "

We are, therefore, clearly of the view that the husband, by virtue of his being the managing agent of the community, may sign a petition to annex property to the city.

According to the stipulation items 5, 9, 11, 13, 16, 18 and 25, having a total valuation of $4,960, are properties of widows and soldiers and were signed for by their owners. It is contended by appellee that because widows and soldiers are entitled to an exemption of $2,000, which they claimed in these instances, they are not lawfully on the petition. They are the *owners* of the property which they signed and the law is:

" . . . On presentation of a petition in writing, signed by the *owners* of not less than one-half in value of the property in any territory contiguous to the city, as shown by the last assessment of said property, and not embraced within its limits, the common council of said city may, by ordinance, annex such territory to said city, . . . . " Italics ours. Section 16–701, Arizona Code 1939.

█ Unlike the property of a church, the United States, the state, county, municipality, educational or charitable institutions, where the name of the owner is notice to the taxing authorities that the property is exempt from taxation and not required to be claimed as exempt to be exempt, a widow's or soldier's property must be assessed and the exemption claimed in order to be effective, and if the valuation is above $2,000, the excess is not exempt, and where the total assessment exceeds $5,000, no part of it, not even the $2,000, is exempt. The assessor has no way of knowing that any taxpayer is a widow or a soldier and that an exemption will be claimed by her or him, unless she or he first places the property on the tax roll and later claims the exemption, making proof of the facts entitling them to it. *Calhoun, Treasurer,* v. *Flynn,* 37 Ariz. 62, 289 Pac. 157.

█ In *City of Phoenix* v. *State of Arizona,* 58 Ariz. 8, 117 Pac. (2d) 87, 89, the city annexed certain property upon a petition signed by the Phoenix Union High School District, and others, and the property of the Union High School District was necessary to constitute the one-half in value of the property of the district sought to be annexed, and the court, in speaking of the right of the school property to be represented on the petition, said:

"Our general taxation statutes expressly state it to be the duty of the assessor to place upon the assessment roll only 'property in his county subject to tax-

ation' (sec. 73–402, Arizona Code 1939), and all through the code the references in regard to the duty of the assessor apply to property of this nature only. We think the true meaning of the assessment statutes is that it is only property which is or may under some circumstances be subject to taxation that may properly be made a part of the assessment roll, and that property whose ownership in and of itself exempts it from all taxation has no legal place on such a roll, . . . . We think also upon general principles of justice and equity it is not to be presumed that the legislature intended that property which could not bear any of the burdens of annexation should be entitled to be heard upon the question. . . . ''

Inasmuch as a widow's or soldier's property must be placed on the tax rolls and when their assessment exceeds $2,000 none of the excess is exempt, and in case the total assessment is $5,000, or over, not even the $2,000 is, it is our view that they may sign the petition, for widows and soldiers must be treated as a class in determining their right to sign, and since some of them have only a partial exemption, others none at all, we think they may all sign.

It further appears from the stipulation that items 7, 15, 24, 31 and 35, totaling a valuation of $5,880, is property that is being purchased under contract by the signers. The stipulation regarding these items provides:

''It is further stipulated that when in this stipulation it is stated that property is being purchased by a purchaser or purchasers and in possession of said property that such contract referred to, was in writing signed and executed by the sellers and purchasers, under the terms of which the property is to be deeded to the purchaser by the sellers when the purchase price provided therein is paid, or deeds from the sellers are held in escrow to be delivered to the buyers when such purchase price is paid, and that such purchasers have dominion over said property with the

right to occupy and live on such premises or rent or lease same."

▉ The word "owner" has no technical meaning, but its definition will contract or expand according to the subject matter to which it is applied. As used in statutes it is given the widest variety of construction, usually guided in some measure by the object sought to be accomplished in the particular instance. It has lead some courts to declare that the word has no precise legal signification and may be applied to any defined interest in real estate. *Merrill Ry. & Lighting Co.* v. *City of Merrill,* 119 Wis. 249, 96 N.W. 686.

▉ It is true the legal title to these parcels of real estate had not yet passed to the purchaser, yet they were in possession, exercised dominion over them, could rent or lease them, paid the taxes, and to the extent of their payments at least, were the equitable owners. "After the execution of the contract," to use the language of the court in *Williamson* v. *Neeves,* 94 Wis. 656, 69 N.W. 806, 809, "the vendee must be regarded as the real owner of the property, though not the holder of the legal title,—the vendor holding the legal title in trust for the vendee, subject to the payment of the purchase money; and, as between the parties, the latter is regarded as a mortgagor, and the vendor as the mortgagee, of the premises for the amount due for the purchase money."

In *Ritchie* v. *City of Green Bay,* 215 Wis. 433, 254 N.W. 113, 114, 95 A.L.R. 1081, the court said:

" . . . While the matter is not free from difficulty, it is our conclusion that the vendee in possession under a land contract that obligates it to pay the purchase money is an owner within the meaning of the exemption statute. Such a contract clearly contemplates that the vendee shall eventually acquire the legal title and gives it the right by continuing its payments ultimately to demand such title from the vendor.

The retention of the title by the vendor is merely a security device. The vendee assumes all of the burdens of ownership, including the duty, as between it and the vendor, of paying taxes. . . . ''

In the case of *Shaw* v. *Goben et al.,* 167 Mo. App. 125, 151 S.W. 209, 210, wherein a citizen, who had purchased a lot in a city under contract, attempted to enjoin the city authorities from letting a paving contract, the court said:

''The evidence showed that Vice did not have a deed to the property which, it is claimed, made him a property owner. But it showed that he had a contract for the property, and had taken possession and was living thereon, and had paid $1,000 in part payment of the purchase price, and had been offered a deed, which was returned for correction, and owing to the fact that there were many joint owners, he had not yet received it. We think him a property owner, and that he was properly counted as such by the city council. He was the equitable owner, and could have compelled the execution of a deed upon tender of balance of purchase money. 22 Amer. & Eng. Ency. of Law, 925.''

■ Items 6, 10 and 26, valuation $1,285, is community property that was signed for by the wife only. The court held that this could not be counted, but we think the wife, at the instigation of the husband, could sign for both since the petition was not a deed but only the expression of a desire that their property be counted in determining whether the addition should be annexed or not.

■ Item 3 of the stipulation, valued at $665, is property owned by Adelaide M. Jennings Waln and John M. Waln, husband and wife, both of whom signed the petition. The petition requested that blocks 12, 18 and 23, Grand Avenue Addition, ''or any part of the foregoing area, or areas contiguous thereto, which the person or persons having the custody of this

petition may determine upon prior to presentation of this petition to the City Commission of the City of Phoenix'' be annexed to the city of Phoenix. These parties were very anxious that their property be counted in determining the sufficiency of the petition to annex, and the fact that they authorized the circulator of the petition to change, if he saw fit, the boundaries of the property to be annexed before submitting the petition, does not change the fact that they wanted annexation to prevail.

■ Item 22 of the stipulation, valued at $310, was signed for by C. D. Cropper, mortgagee. He acquired the property from the Citizens Bank in 1930, Clarence E. and Mary Olvey owners of the legal title having theretofore given a mortgage on it. He has never foreclosed. Two years later the Olveys moved out without ever paying him anything on either principal or interest and since then their whereabouts have been unknown. He rented it for two years, then moved in himself, and for five years has occupied the premises. He was in possession, exercising dominion over the property and paying the taxes thereon when he signed the petition. We think he was the owner within the meaning of the annexation statute and his property was rightfully counted. In *Omaha Bridge & Terminal R. Co.* v. *Reed,* 69 Neb. 514, 96 N.W. 276, the court held that the mortgagee was the owner within the meaning of the statute providing for the taking of land under power of eminent domain. In *Merriman* v. *City of New York,* 227 N.Y. 279, 125 N.E. 500, the same ruling was made.

The foregoing items total $28,480, which amounts to more than the $25,965 required.

■ Item 23 of the stipulation, valuation $355, was signed by J. D. Halstead, owner, and it is agreed that it stood in the name of Walter C. Just, to whom

it was conveyed by the Halstead estate. This was not counted and we think properly so.

Item 28 of the stipulation, valuation $200, a lot owned by Robert T. Morton and Elizabeth Morton, was signed for by their son, Robert Morton, without authority. It was not counted, and we think properly so, as he had no authority whatsoever to sign.

Item 30 of the stipulation, valuation $360, was owned by James W. Minor, and the petition is signed "Margaret Simmons by W. L. LaRue." Mrs. Simmons was administratrix of the estate of James W. Minor at the time and she told Mr. LaRue to sign the petition for this item. It was improperly on the petition as the administratrix is not the owner and cannot sign, much less authorize some one else to do so. The property belonged to the heirs, or, if there was an indebtedness, to the creditors.

It is our view, therefore, that Ordinance No. 2817 of the City of Phoenix was legally adopted and should be upheld. Such is the order of the court.

ROSS and STANFORD, JJ., concur.