175 P.2d 811

**CITY OF PHŒNIX et al. v. SUPERIOR COURT OF MARICOPA COUNTY et al.**

No. 4949.

Supreme Court of Arizona.

Dec. 11, 1946.

Jack Choisser, City Atty., Frank E. Flynn, U. S. Atty., Charles B. McAllister, Ass't U. S. Atty., Jennings, Salmon &

Trask, and J. A. Riggins, all of Phœnix, for petitioners.

V. L. Hash, of Phœnix, for respondents.

PER CURIAM.

This action arises out of an effort on the part of the city of Phœnix to provide housing for veterans and their families. It appears that three of the five members of the city commission met at a regular meeting on February 19, 1946, and attempted to adopt an emergency ordinance, Resolution No. 8332 of City Ordinances, which directed and authorized the execution of an agreement with the Federal Public Housing Authority, generally designated as FPHA, for the construction of temporary housing for veterans and their families in a district bounded by Portland Street on the north, Roosevelt Street on the south, 16th Street on the west, and 20th Street on the east, city of Phœnix. In compliance with the supposed authority of this resolution and on the same day a contract was entered into with FPHA providing for the construction of temporary dwellings on the tract. At the same meeting the Commission adopted a separate resolution (8333) authorizing and directing the City Manager to lease such acreage as in his opinion would be necessary to provide a location for the dwelling units. This resolution did not carry the emergency clause. The city on the first day of March entered into a lease for the tract with the owner, Ottilia Linsenmeyer. This lease was for a period of one year, expiring February 28, 1947, at a rental of $1,500, payable $125 per month, with right of renewal for an additional year. The lease provided that the premises were to be used solely for the construction of "Veterans Emergency Housing Project," and that upon the termination of the lease all housing units should be removed.

The contract with FPHA called for the erection of 148 units at the expense of the federal government, save and except that the city was required to furnish access streets or roads, with sidewalks along streets within the boundaries of the site, and to extend necessary utilities, including such items as storm sewers, water, electricity and gas. It was also required to furnish grading except such as was provided by FPHA under the terms of the contract. Substantially the whole cost of the project was to be borne by the federal government. Following the execution of the agreement, the FPHA entered into contracts with Del E. Webb Construction Company, a corporation, and Shumaker-Evans, Contractors, a corporation, and at the time of the institution of the action herinafter mentioned, it had paid the contractors the sum of $132,000 expended by them for labor and services and not for materials, the latter having been supplied by the United States.

On September 5, 1946, O. T. Brockman, in a representative capacity as a taxpayer and property owner of the city of Phœnix, brought suit in the Superior Court of Maricopa County, against the city, its

commissioners, the contractors, the Federal Public Housing Authority, an instrumentality of the United States Government, Frank W. Rose, the regional director, and Ottilia Linsenmeyer, for declaratory judgment and for a decree adjudging the emergency ordinance above referred to (8322) to be void, and the contract and lease to be void and of no force and effect, and that the defendants be perpetually enjoined from carrying out the terms of the contract and from erecting houses on said tract or using funds of the city of Phœnix for such purpose. Upon the ground that no suit could be maintained against a federal instrumentality or officer, the action was dismissed against FPHA and Frank W. Rose, regional director. No judgment was taken against Ottilia Linsenmeyer.

After hearing, the court found that the contract between the city and the FPHA was void for the reason that the ordinance adopted with the emergency clause was not approved by the affirmative vote of four-fifths of the commissioners as required by the charter (Sec. 14, Ch. IV, City Charter). The court also found that the lease made and entered into between the city of Phoenix and the defendant Linsenmeyer was void and of no force and effect for the reason that the ordinance authorizing the lease had not been adopted as an emergency matter and was not effective until 30 days after its passage (Sec. 14, Ch. IV, City Charter). The court also found that provisions of the Lanham Act,

42 U.S.C.A. § 1521 et seq., under which the FPHA had entered the contract, had not been complied with in that consultations with local authorities had not been held, that the defendants had failed to show the planning and designing of the buildings to be in conformity with surrounding structures, and that the buildings did not conform, as far as practicable in location and design, to local planning and tradition. The further finding was made that no evidence had been offered that the President of the United States had found an emergency to exist locally respecting shortage of housing. Other findings were made which need not be considered, however. The court then perpetually enjoined the city, its commissioners, manager, officers and servants, and the contractors, their agents and servants, from proceeding further with the construction of buildings upon the premises.

It seems to have been conceded in the court below, and is conceded here, that the ordinance adopted, No. 8332, was void in that it was not adopted by the necessary vote of the commissioners. Objection was made by defendants to the judgment and restraining order in that as drawn it prohibited the city from proceeding further in connection with such housing project by the adoption of a valid ordinance, and that upon further hearing it might be shown that the Veterans Emergency Housing Project was found to exist in accordance with the provisions of Title 5 of the Lanham Act, 42 U.S.C.A. § 1571 et seq. It

was suggested that the injunction be limited by the following provision "until such time as may be shown to this court that the defects hereinabove found by the court to exist have been remedied." This objection and the amendment to the judgment was denied by the court. Thereupon the remaining defendants in the action filed petition for writ of prohibition in this court, the basis of the petition being that (1) the superior court had exceeded its jurisdiction in that it had no power to enjoin the contractors since they were agents and servants of the United States, nor to restrain and enjoin the United States in the use and benefit of its property; (2) the city may not be restrained and enjoined from performing a legislative function, to wit, to correct any defects in connection with the transaction involved by the adoption of a valid ordinance.

■■ It has been strongly urged that the defendants in the action below have a remedy by appeal and that, therefore, this court should not entertain this proceeding. If the remedy by appeal is adequate, the writ of prohibition will not ordinarily lie. Miller v. Superior Court of Mohave County, 21 Ariz. 61, 185 P. 357; Bank of Arizona v. Superior Court of Yavapai County, 30 Ariz. 72, 245 P. 366. But if it appears that the remedy by appeal is not adequate, the writ may issue. Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527. Furthermore, the remedy by prohibition is within the sound discretion of the court. City of Phoenix v.

Rodgers, 44 Ariz. 40, 34 P.2d 385. Here it would appear that the project restrained grows out of an emergency due to a housing shortage. The buildings being constructed are for temporary purposes only and to meet a present existing condition. Delay incident to an appeal will defeat the object of the transaction, the speedy housing of veterans and their families. The remedy by appeal is not adequate.

■ The writ primarily lies where the lower court has no jurisdiction or has exceeded its jurisdiction. Hislop v. Rodgers, supra; Bank of Arizona v. Superior Court of Yavapai County, supra; City of Phoenix v. Rodgers, supra. The questions are presented: 1. Did the court have jurisdiction to issue the restraining order against the contractors 2. Was the court's order perpetually enjoining the city in excess of its jurisdiction?

■ It is axiomatic that the United States cannot be sued without its consent. Such consent must be evidenced by an Act of Congress. Such has been the holding of the Supreme Court of the United States since McCulloch v. Maryland, 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579, nor is there a distinction between a suit directly against the United States and suits against its property. The rule is succinctly stated in 54 Am.Jur. 635, Sec. 128, United States: "The rule of immunity of the Federal government from suit without its consent to be sued is all-embracing, and is applicable to all kinds of actions, such as condemna-

tion proceedings, claims arising out of transactions of a commercial character, and proceedings to secure an injunction against the United States. It recognizes no distinction between cross bills and original bills, or between ancillary and original suits, but extends to suits of every class. *Nor is there a distinction between suits against the government directly and suits against its property. * * * A proceeding against property in which the United States has an interest is a suit against the United States to which the consent of the United States is necessary.*" (Emphasis supplied.)

The evidence before the Superior Court in this proceeding is conclusive that the buildings in question are property of the United States. Paragraph 30 of the general provisions of the contract with Del E. Webb Construction Company and Shumaker-Evans, Contractors, is as follows:

"30. *Ownership of Property.* Ownership of materials, building equipment supplies, and of any and all items the cost and value of which are repaid to the Contractor as a part of production cost, shall vest in the Government from the time that payment on account of specific items or lots thereof shall have been made by the Government. After title shall have passed to the Government by virtue of such payment, the Contractor shall have custody of such materials and other items as agent of the Government for the purpose of incorporating them into the work or of utilizing them for the completion thereof."

█ It will be noted that the judgment restrains and enjoins the contractors and their or its agents, servants and attorneys, and each of them, and all others acting in aid or assistance. Under the terms of the contract the material going into this construction is furnished by the United States through various governmental agencies, including War and Navy Departments, the construction being supervised by other agents and officers of the Government. By the terms of the decree all of such agents or officers of the Government are restrained from assisting or aiding the contractors in such construction. The principle of immunity of the United States likewise applies to its officers, agents and servants. 54 Am.Jur., page 636; Transcontinental & Western Air v. Farley, 2 Cir., 71 F.2d 288; Boeing Air Transport v. Farley, 64 App.D.C. 162, 75 F.2d 765; Ferris v. Wilbur, 4 Cir., 27 F.2d 262.

█ Courts have no power to enjoin legislative functions. 28 Am.Jur. 365, et seq., secs. 175, 176, Injunctions. This applies to legislative action by a municipality. 28 Am.Jur. 366, sec. 177, Injunctions. "A municipal council, when acting or proposing to act, in a legislative capacity upon a subject within the scope of its powers, is entitled to the same immunity from judicial interference as is the state legislature or any other lawmaking body. A court of equity, being vested with judicial, not legislative, powers, cannot properly interpose any obstacle to the exercise of

the legislative discretion vested in such municipal body. * * *"

In 28 Am.Jur. 368, sec. 179, Injunctions, it is said: "A municipal council, like other legislative bodies, is liable to commit errors which may be fatal to its action; but that does not take away its power to act. Nor has a court of equity any place in such council to supervise or superintend its proceedings; it has no powers to prevent action by the council in enacting or amending ordinances merely because the mode or manner of the council's procedure may be irregular."

Insufficient or defective ordinances, within the scope of the municipal powers may be validated. McQuillan, Mun.Corporations, vol 8, (Supp.) par. 1893, states: "An ordinance that is merely insufficient or defective, which is within the scope of the municipal powers to pass, may be validated, as well as the proceedings taken thereunder, by subsequent appropriate action."

 Insofar as the judgment of the court enjoins further validatory action by the council, or the enactment of a valid ordinance, it constitutes an excess of jurisdiction.

 We are of the opinion that the city has the general power under its charter to expend money and enter into contracts for the housing of veterans and their families, such action under present conditions being for a public purpose. Sec. 2, Ch. II, City Charter. The Charter of the City of Phoenix gives it the right to expend moneys for a public purpose and to expend moneys which may be conducive to the welfare, safety, good health, convenience or improvement of the City of Phoenix and the inhabitants thereof.

Chapter II, Section 2, subs. (e) & (1) of the City Charter provide: that the city has the power:

"(e) To acquire by purchase, condemnation or otherwise, within or without the city, such land and other property as may be necessary for the establishment, maintainance and operation of any public utility, *or to provide for and effectuate any other public purpose;* and to sell, convey and dispose of the same for the common benefit." (Emphasis supplied.)

"(1) To install, maintain and operate all necessary works, plants, institutions, departments, offices and systems, proper or convenient, *or which may be conducive to the welfare, safety, good health, convenience* or improvement, of the City of Phoenix and the inhabitants thereof." (Emphasis supplied.)

Housing measures are uniformly held to come within the meaning of "public purpose" as used in charters and constitutions. Vol. 35, Words and Phrases, Perm. Ed., p. 305. See also 37 Am.Jur. 751, sec. 135, Municipal Corporations, note 13; 123 A.L.R. 998, to the effect that erection of soldiers and sailors memorial by a municipality is a public purpose.

The erection of these structures does not come within the inhibition of sec. 7, Art. 9, Const. of Arizona, which reads as follows: "Neither the state, nor any county, city, town, municipality, or other subdivision of the state shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the state by operation or provision of law."

The reasoning in the case of Humphrey v. City of Phoenix, 55 Ariz. 374, 102 P.2d 82, 83, in upholding the "municipal housing law", Chap. 82, Laws 1939, is very apt here. The court said: " * * * If it be borne in mind that slum clearance projects are means adopted by society for self-protection against crime and disease, and that money spent to prevent or eradicate these enemies is for the public good and general welfare, even though the effect is felt by a given class more than by the community at large, it will be realized the sums spent are not a gift or loan to anyone but an expenditure in the interests of the general public." Lack of adequate housing results in illness and disease and may breed crime. All the residents of a community are vitally interested in the housing of its inhabitants. The housing of one class will tend to relieve the housing shortage as a whole. Obviously the expenditures here contemplated are for a public purpose.

We do not read Ch. 82, Laws 1939, relating to municipal housing and authority of cities to initiate slum clearance projects, as invading the whole field of housing. This was an enactment relating to slum clearance projects and providing dwelling accommodations for persons of low income. The powers therein granted were not intended to and do not limit powers already possessed by cities and towns. This is evident from a reading of Section 22: "The powers conferred by this act shall be in addition and supplemental to the powers conferred by any other law." The legislature has not appropriated the field. The city of Phoenix acts under a home rule charter which vests it with the power to spend money for a "public purpose." The opinion of this court in City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1, 164 P.2d 598, has full application here.

By Section 21-1832, A.C.A.1939, the Supreme Court may affirm, reverse, or modify any judgment or order appealed from and may render such judgment or order as the court below should have rendered. By the authority of this section we hereby modify that portion of the court's restraining order appearing on page 3, lines 16 to 27, inclusive, to read, as follows: "It Is Therefore Ordered, Adjudged, And Decreed that the defendant City of

Phoenix, its Commissioners, City Manager, agents, servants, and attorneys are hereby enjoined, restrained and prohibited from further proceeding with the construction of the buildings upon the premises hereinafter described under the pretended authority of Ordinance No. 8332."

and by the insertion, as the next to the last paragraph of the judgment, of the following: "The injunction and order herein made shall be without prejudice to the city of Phoenix and its commissioners to validly adopt such additional measures as may authorize it to legally proceed with the prohibited transactions. The judgment having been so amended, the petition for a writ of prohibition by the City of Phoenix is denied.

The petition for a peremptory writ of prohibition filed by the contractors is hereby granted, and the writ will issue.