267 P.2d 717

**CITY OF TUCSON et al.**

v.

**GARRETT, Judge, et al.**

No. 5874.

Supreme Court of Arizona.

Feb. 23, 1954.

Rehearing Denied May 18, 1954.

Harry L. Buchanan, City Attorney, F. Dale Healy and William J. Riegger, Asst. City Attys., Tucson, for petitioners.

Harry Ackerman, Charles E. Ares, Tucson, for respondents.

WINDES, Justice.

One John V. Crosby and his wife filed a complaint in the Superior Court of Pima County, Arizona, alleging in substance that certain petitions were filed with the City Council of the City of Tucson and that the form of such petition is:

"Petition

"To the Honorable Mayor and City Council of the City of Tucson:

"We, the Undersigned, Request the City of Tucson to Annex All of the Real Property Owned by Us and Located in a Territory Contiguous to the City of Tucson and Not Now Embraced Within the Limits of the Said City of Tucson. The Mayor and City Council May Determine the Exact Boundary of Said Territory to be Annexed: Provided, However, That the Provisions of Section 16–701, Arizona Code Annotated 1939, Are Fully Observed and Complied With."

. It is further alleged that the City of Tucson is without jurisdiction to consider the petitions for the reason (so far as herein material) that the same violate section 16–701, A.C.A.1939, in that said statute contemplates that the entire area to be annexed should be described in the petitions and for the reason that the petitions attempted to delegate authority to the City to fix the boundaries of any territory it wishes to annex. It is further alleged that the City intended to act upon these petitions and, unless restrained by the court, would adopt a resolution or ordinance annexing said territory. It also appears that plaintiffs are the owners of property within the territory which the City proposes to annex but were not petitioners for such annexation. Upon filing the complaint, the Honorable Lee Garrett, Judge of the Superior Court of Pima County, Arizona, issued a temporary restraining order enjoining and restraining the City of Tucson from considering the petitions or passing any resolution or ordinance with the purpose of annexing any territory on the basis of the petitions.

After the issuance of the restraining order, the City of Tucson, hereinafter referred to as the City, asked this court for a writ of prohibition to restrain the Honorable Lee Garrett and the Honorable Jesse A. Udall, Judge of the Superior Court of Graham County (he having been called in to hear the case) from enforcing the restraining order or proceeding further with the matter. We issued an alternative writ of prohibition and the matter is now presented for the purpose of determining whether the same shall be made permanent or quashed.

Since the writ of prohibition is for the purpose of testing the jurisdiction of an inferior tribunal, we are concerned with the power of a superior court to enjoin the enactment of the proposed annexation ordinance, which in turn requires determination of whether the City is empowered to pass the same. If the petitions filed be insufficient as a matter of law to give the City Council jurisdiction to enact the ordinance, the superior court has power and jurisdiction to enjoin its passage. Gorman v. City of Phoenix, 70 Ariz. 59, 216 P.2d 400. Likewise, if the City is acting within its legitimate legislative power as delegated to it by the State, the superior court has no power to interfere therewith by the issuance of an injunctive restraining order. Section 26–104, A.C.A.1939. If the trial court has misconstrued the statute, and the effect of its restraining order is to enjoin the exercise of a legitimate legislative power, it has by statutory construction attempted to enlarge its own jurisdiction, which it cannot do. Arizona Public Service Co. v. Southern Union Gas Co., Ariz., 265 P.2d 435. Consequently, whether the superior court exceeded its jurisdiction in issuing the temporary restraining order depends upon whether the petitions filed empowered the City to enact the proposed

ordinance and this in turn depends upon the proper interpretation of section 16–701, supra, the source of the City's power in this matter. This section provides that on presentation of a petition signed by the owners of not less than one-half in value of property in any contiguous territory, the City may by ordinance annex such territory upon filing with the county recorder copies of the ordinance with an accurate map of the territory annexed.

In analyzing this statute, an enunciation of some of the well-established rules applicable to the addition of territory to municipalities, and the legislative power in connection therewith, is appropriate. The extent of the right of municipalities to enlarge their boundaries is dependent entirely on the legislature and its power in that respect is plenary in the absence of constitutional limitations, and there are none affecting the problem herein. The legislature may give to municipalities the power to annex territory upon any condition it chooses to impose, either with or without the wishes of the inhabitants of the territory involved, either with or without notice to anyone, with or without the right of objecting inhabitants to protest. Skinner v. City of Phoenix, 54 Ariz. 316, 95 P.2d 424. When a statute is enacted prescribing the conditions under which annexation may be accomplished, it is necessary that such conditions exist and are substantially complied with before the municipality may legally bring additional territory within its boundaries. Section 16–701, supra, is the statute conferring upon municipalities in Arizona this power to annex territory and prescribing the conditions under which the same may be accomplished. The express conditions are: a petition of the owners of property in any contiguous territory representing not less than 50 percent of the value of the property to be annexed, passage of an ordinance providing for the annexation of such territory, and filing with the county recorder of a copy of the ordinance with a map of the territory annexed. Respondents' position is that there is *implied* another condition to the effect that the petition itself delineate or describe the territory which is to be annexed and since the petitions herein contain no such description, the requisite conditions of the statute are not complied with and consequently the City has no jurisdiction to pass the annexation ordinance.

When a requisite petition has been filed, without doubt the statute gives the City Commission the entire discretion as to whether the request therein shall be granted. The petitioners are mere supplicants and have no legal rights to require annexation under any condition. Beyond any doubt the statute requires no notice to anyone of its intention to recognize the petition. So long as the petitions meet the requirements of the statute, no dissatisfied or potentially dissatisfied person within the territory which the City proposes to add to its boundaries is given any legal right to

effectively protest the action of the commission. It follows that the absence of a delineation of the entire proposed area in the petition deprives no one of any legal right. The thought is advanced that the legislature impliedly intended that the description of the entire area be included to give disgruntled owners notice to enable them to exercise their persuasive power upon their neighbors or the City Commission, and possibly thereby prevent the annexation. We are unable to impute to the legislature an intention to imply a requirement that, if complied with, serves no legal purpose. Such an interpretation would by implication substantially strait-jacket the City and take from it the power and right to define its own boundaries in order to merely permit dissatisfied owners to exercise moral persuasion carrying no legal force. In exercising the discretion given it under this statute, there are necessarily many matters to be considered by the City: the citizens whom the council represents may be vitally affected; the obligations which by law will be imposed upon the municipality and its inhabitants might well be of grave concern; the problem of the economical extension of water, sewer and other services might well be influenced by the nature and extent of the boundaries of the territory annexed; the amount of revenue to be derived from the addition of territory as compared with the additional cost to the City, and many other matters must be weighed and considered by the city officials in performing their duty under this statute. If

we read into the statute by implication the requirement that the petitioners must define the area, we thereby, to a substantial degree, dissipate the city's discretionary powers expressly given. Such a construction would leave the commission with two alternatives, either to permit applicants for annexation to define the city's boundaries or forego the right of expansion. Our view is that the legislature never intended to expressly give the city unrestrained discretionary power of such importance and at the same time by implication restrain such power to this degree. We do not feel justified in rewriting the statute to accomplish such a purpose.

It is virtually conceded by respondents that if a petition did delineate the boundaries of the proposed annexation, the City might annex all or part thereof dependent upon what the commission thought would best serve the public interests. We are unable to subscribe to the logic of a proposition that the commission has jurisdiction to alter the proposed boundary by striking a part of the area but has no power to alter the boundary by adding thereto when the owners of the territory added have no right to notice, nor right to protest.

For the reasons herein stated, our view is that the Commission may under the situation here presented describe the boundaries of the area to be annexed, even though such description is not embodied in the petitions, provided that at least 50 percent of the value of the territory an-

nexed shall be represented in the petitions filed. We are further fortified in this view by the express provision of the statute wherein it requires the City to file a map of the territory. This is the only express reference in the statute requiring a description of the annexed territory. Respondents would have us read this provision to mean the City shall adopt a map of the territory annexed as described in the petitions, or as described in the petitions and modified by the Commission. We do not feel justified in straining to this extent to put something in the statute that is not written therein.

▮ The thought is presented that unless the petition describes the entire area, there is nothing from which the city officials may calculate the 50 percent. This argument carries little force in view of the fact that in this case such a calculation has been made showing in excess of 60 percent of the territory to be annexed as represented in the petitions filed.

The alternative writ of prohibition is made permanent.

PHELPS, C. J., concurs.

UDALL, Justice (Specially concurring).

I was not present when the alternative writ of prohibition was issued in the instant case, but in the companion case City of Phoenix v. Struckmeyer, 77 Ariz. 84, 267 P.2d 724, for the reasons hereinafter stated I voted against the issuance of the writ. However, being now fully advised in the premises I concur in the construction given to section 16–701, A.C.A.1939, and under the interpretation arrived at by the court's majority I agree that the Superior Court of Pima County was without jurisdiction to enjoin the passage, by the city council, of the annexation ordinance in question.

The law is well settled that in the exercise of its revisory jurisdiction, the issuance by this court of the extraordinary writ of prohibition is ordinarily discretionary and the writ only issues as a matter of right where there is no other remedy. Redewill v. Superior Court of Maricopa County, 43 Ariz. 68, 29 P.2d 475. If the remedy by appeal is adequate, the writ of prohibition will not ordinarily lie, City of Phoenix v. Superior Court of Maricopa County, 65 Ariz. 139, 175 P.2d 811, nor can this writ be resorted to simply to circumvent ordinary appeal process. Westerlund v. Croaff, 68 Ariz. 36, 198 P.2d 842; Bank of Arizona v. Superior Court, 30 Ariz. 72, 245 P. 366. It is my view that in the borderline cases, such as this, where the ultimate answer is in grave doubt, we should permit the trial court to determine its jurisdiction after a hearing is had on the temporary restraining order rather than for us to step in by prohibition and settle the question. I do not perceive in the instant case how serious harm or even a delay would have been caused if we had kept "hands off" and corrected an erroneous ruling—if such had been made—on appeal. On the time element it has always been the

policy to advance on our docket appeals involving the public interest.

Had the majority of this court held the annexation petitions were inadequate, then obviously the writ of prohibition should not have issued. To me prudence dictates that this court should only issue such prerogative writ when there clearly appears a reasonable basis for believing that the lower court is proceeding without or in excess of its jurisdiction and that there is no adequate remedy at law. Except by hindsight this was not evident in the instant case.

STANFORD, Justice (dissenting).

I object to the following portion of a paragraph of the majority opinion:

"For the reasons herein stated, our view is that the Commission may under the situation here presented describe the boundaries of the area to be annexed, even though such description is not embodied in the petitions, provided that at least 50 percent of the value of the territory annexed shall be represented in the petitions filed. * * *"

If a large and very valuable industrial business were included in the property sought to be annexed, it would be possible for the City of Tucson to take and add to it a thousand or many thousand acres of grazing or other land lying beyond the limits of the land petitioned to be annexed. The City Commission would have such power under the majority opinion.

I claim the majority opinion gives to Tucson an unbridled, unrestricted, and unwarranted power.

Because the majority opinion did not quote Section 16–701, A.C.A.1939, our law on this subject, I submit it as very helpful and necessary:

"Annexation by petition of property-owners.—Any city may extend and increase its corporate limits in the manner following: On presentation of a petition in writing, signed by the owners of not less than one-half in value of the property in any territory contiguous to the city, as shown by the last assessment of said property, and not embraced within its limits, the common council of said city may, by ordinance, annex such territory to said city, upon filing and recording a copy of such ordinance, with an accurate map of the territory annexed, certified by the mayor of said city, in the office of the county recorder, in the county where the annexed territory is situated."

The majority opinion concedes this section to be "the source of the City's power in this matter."

My views in this case apply to City of Phoenix v. Struckmeyer, 77 Ariz. 84, 267 P.2d 724.

LA PRADE, Justice (dissenting).

80

I cannot agree with the construction placed upon Section 16–701, A.C.A.1939, by the majority of the court.

This section reads as follows:

"Annexation by petition of property-owners.—Any city may extend and increase its corporate limits in the manner following: On presentation of a petition in writing, signed by the owners of not less than one-half in value of the property in any territory contiguous to the city, as shown by the last assessment of said property, and not embraced within its limits, the common council of said city may, by ordinance, annex such territory to said city, upon filing and recording a copy of such ordinance, with an accurate map of the territory annexed, certified by the mayor of said city, in the office of the county recorder, in the county where the annexed territory is situated."

This section, if its terms are given their natural and reasonable meaning, provides that at least 50% of the owners by assessed valuation, in a territory shall request the city to annex *that territory*. The city's jurisdiction to act is dependent upon and limited to the request contained in the petition. The request contained in the petitions here involved is that "All the real property owned by us (the petitioners) be annexed". The only request to the city is that it annex the property of those persons signing the petition. By the petitioners' own admissions the signatures on the petitions amount to only 60.81% in assessed valuation of the area the city is attempting to annex. Yet it attempts to annex 100% of the area fixed by it—an action obviously exceeding the requests of those who signed the petitions.

The statute under which this annexation was sought to be accomplished provides, in substance, that the city may act upon petition to annex *a particular area*. The jurisdiction of the city to annex depends upon compliance with the statute. It is therefore necessary to analyze the requirements of the statute.

Obviously, a petition must be presented to the city before it may act. And the word "petition" can only be defined as a *request* that a *certain thing* be done. Under the terms of Section 16–701 it is not contemplated that the required number of persons within a territory may request the city merely to "annex"—they are limited to requesting annexation of the described territory in which their property is situated.

That this was the intent of the legislature is further borne out by this court's decision in Gorman v. City of Phoenix, 70 Ariz. 59, at page 64, 216 P.2d 400, 404:

"* * * The determination by the city commission of whether the petition is signed by 'the owners of not less than one-half in value of the property in the *territory' sought to be annexed by petitioners* is a judicial function and therefore subject to review by the court. * * *" (Emphasis supplied.)

Implicit in the language *"'territory' sought to be annexed by petitioners"* is the proposition that it is the property owners, and not the city, who determine, in the first instance, the territory to be annexed, even though the city in acting on the petition may reject all or part of the designated area, and those petitioners cannot request the annexation of a "territory" without describing one.

The fact that it was never contemplated that the city should have the right to initially determine the territory to be annexed is shown by the enactment of Section 16–702, A.C.A.1939:

"When any city shall desire to annex any contiguous territory * * *. and the same shall not have been petitioned for, as provided for in the preceding section, the legislative body of such city may * * * authorize the mayor * * * to petition the superior court * * *."

This statute was originally enacted, along with Section 16–701, in 1893 and titled "An Act Authorizing Incorporated Cities to Extend and Enlarge their Limits." Laws 1893, p. 91. The language of this Act is substantially the same as the present statutes. In order to determine the intent of the legislature, it is necessary to view this Act as a whole. The applicable rule of construction is as follows:

"In the absence of express statutory language to the contrary, a statute must, or should, be read or construed as a whole, or in its entirety, and, with respect to the construction of a statute, its division into sections is a purely artificial and unessential arrangement. Likewise, according to the decisions on the question, a section or a provision of a statute must be construed as a whole. A statute should also be construed with respect to the subject matter to which it applies and the particular topic under which the language in question is found.

"All parts, provisions, or sections of a statute or section, must be read, considered, or construed together, and each must be considered with respect to, or in the light of, all the other provisions or sections, and construed in connection, or harmony, with the whole." 82 C.J.S. Statutes, § 345, p. 691.

Section 16–702 was intended to provide the vehicle for annexation where the city desired to be the moving party. It provided a means for the city to annex a *"contiguous territory"* where *"the same shall not have been petitioned for, as provided for in the preceding section"*. The very language in Section 16–702, emphasized above, means that under Section 16–701 the property owners are to petition for the annexation of a *"contiguous territory"* and they can only do so by describing, in the petition, the contiguous territory which they wish the city to annex. Also, Section 16–705, A.C.A. 1939, provides a method whereby the voters or owners in a tract could petition the court for annexation. Certainly it was not intended that these owners could petition for

annexation without describing the area to be annexed.

The use of the word "territory" in all these sections of the statutes indicates clearly that the legislature had in mind a *defined area.*

That Section 16–702 was held to be an unconstitutional delegation of legislative powers to the judiciary, Udall v. Severn, 52 Ariz. 65, 79 P.2d 347, does not detract from its force as an indication of the legislative intent. In summary that intent was that the territory to be annexed is to be determined initially by the petitioners and described in the petition.

In City of Phoenix v. State ex rel. Harless, 60 Ariz. 369, 137 P.2d 783, 787, 146 A.L.R. 1255, this court dealt with the question among others, of the validity of a particular consent to annexation. It was there stated that the

"* * * fact that they (the petitioners) authorized the circulator of the petition to *change,* if he saw fit, the boundaries of the property to be annexed *before submitting* the petition, does not change the fact that they wanted annexation to prevail." (Emphasis supplied.)

The petitions in that case *did* describe an area to be annexed although the circulator was empowered to change the boundaries *before* submitting the petitions. In the instant case, the petitions have already been filed and still no area is defined therein. Furthermore, the word "change" implies the existence of some initial boundaries which may be altered. The cited case is not authority for the city to initially determine the area. It does support the view that the petitions must describe the territory sought by the signers to be annexed.

If Section 16–701 is given its reasonable meaning when read in the light of the Gorman and Harless cases and in the light of the legislative intent evidenced by Section 16–702, the conclusion is inescapable that the petitions for annexation must describe the territory sought to be annexed.

It is a general rule of interpretation that where the language of a statute is obscure or of doubtful meaning (which I think does not exist in this statute) the court in construing such statute may with propriety refer to the history of the times when it was passed. 50 Am.Jur. Statutes, § 295. In this behalf it is interesting to me to note that this statute was first adopted in 1893, at a time when the population for the entire state was 59,620 (1890 census). Tucson was the largest city in the state with a population of 5150, Phoenix had a population of 3152, the cities of Yuma, Prescott and Bisbee had populations under 1800 and the cities of Douglas and Ajo did not exist. The railroad from Ash Fork to Phoenix did not exist and legislators and citizens living in northern Arizona desiring to go to the capitol city had to take the Sante Fe railroad into Los Angeles and ride back over the Southern Pacific, changing at Maricopa to the Maricopa and Phoenix railroad which had been completed six years previously. It is inconceivable to me at this

late date to impugn to the legislature of 1893 an intention such as now has been attributed to it, under the theory that the construction arrived at gives expression to then legislative intent. I am confident that the legislature of 1893 never had any such intent. The Act taken as a whole contradicts any such intention.

The 1893 Act presented three methods looking toward annexation, as I have pointed out above. All three methods contemplated a petition with delineations. The fundamental concept of government upon which this Nation was founded is the right of the people to have notice of and the opportunity to be heard on all matters affecting their persons or property " * * * the right of the people peaceably to assemble and to petition the government for a redress of grievances". The denial of these fundamental rights resulted in the Declaration of Independence. Throughout the body of our constitutional and statutory law the principle of "due process" both with respect to personal and property rights is carefully guarded and protected. Where a statute is susceptible of different interpretations the court should follow the one which accords with the contempt of due process rather than the one which denies it.

In the companion case of City of Phoenix v. Struckmeyer, decided this date on authority of the Tucson case, the same want of due process is denied as is astonishingly demonstrated by the fact that on the morning of December 23, 1953, some 8000 persons living in an area comprising almost three square miles adjacent to the City of Phoenix, discovered in the morning paper that on the previous night said area had been annexed to the City of Phoenix and made subject to City of Phoenix ad valorem taxes, city sales tax, building restrictions, building ordinances and zoning ordinances then prevailing in the city, all without an inkling of notice that any such scheme was being clandestinely contrived.

After reading the majority opinion I think it evidences the philosophy that no restraints should be placed on the cities of Phoenix and Tucson to grow big—ruthlessly if necessary. The majority have lost sight of the fact a new meaning may not be given to the words of an old statute in consequence of changed conditions. The fact that events probably not foreseen by the legislature of 1893 have occurred does not permit the court to undertake to enact new law. State v. National Baseball Ass'n, 141 Tenn. 456, 211 S.W. 357, 4 A.L.R. 368.

The majority opinion states that "The legislature may give to municipalities the power to annex territory upon any condition it chooses to impose, either with or without the wishes of the inhabitants of the territory involved, either with or without notice to anyone, with or without the right of objecting inhabitants to protest." I recognize that the legislature has the plenary powers suggested but my answer is that the legislature in this instance has not granted any such dictatorial powers.

I think that the cities involved were without jurisdiction in the premises to enact the ordinances, and that the alternative writs should be quashed.