BREKKE, Appellant, v. CITY OF SIOUX FALLS,
et al, Respondents

(36 N. W.2d 406.)

(File No. 9003. Opinion filed March 7, 1949.)

**Stordahl, May & Boe** and **Roy E. Willy,** all of Sioux Falls, for Appellant.

**T. J. Slattery,** of St. Paul, Minn., **H. F. Chapman** and **Roy D. Burns,** both of Sioux Falls, for Intervenors and Respondents.

RUDOLPH, J. Ch. 290, Laws of 1939, providing for the abandonment of a drainage district and its works, is as follows:

"Section 1. Any intrastate drainage, drainage district and its works heretofore established or existing under the provisions of Sections 8458 to 8491 inclusive of the South Dakota Revised Code of 1919, as amended, or as revised in the South Dakota Code of 1939 at Sections 61.1001 to 61.1044 inclusive may be abandoned and abolished as herein provided.

"Section 2. Whenever a petition is filed with the county auditor, giving the names and last known post office addresses of all the owners of all the lands affected by any such drainage, and theretofore assessed for construction or maintenance of said drainage, and giving the legal description of each tract of land owned by the respective owners, praying for the abandonment of such drainage, drainage district and its works and stating the reasons therefor, signed by persons owning more than three-fourths of said

lands; and accompanied by a bond with sufficient sureties to be approved by the county auditor, conditioned to pay all expenses incurred if the abandonment and abolishment is not finally accomplished, or if accomplished, are not paid out of surplus funds belonging to the drainage; the county auditor shall present said petition to the board of county commissioners at its next meeting, at which meeting the board shall fix a time and place. for hearing said petition, and shall cause notice of said hearing to be mailed to each owner of land named in said petition at the address stated therein, and shall cause said notice to be published once in the official newspapers of said county, all at least ten days before said hearing.

"Section 3. At such hearing any person interested may appear and be heard; and if after a full hearing the board of county commissioners shall find that such abandonment and abolishment is for the best interests of the owners of more than one-half of all the lands described in the petition, the petition shall be granted and the drainage, drainage district and its works shall be abandoned and abolished. Otherwise the petition shall be denied.

"Section 4. When any petition is granted the board of county commissioners shall provide by resolution that all expenses incurred in the proceedings shall be paid out of any surplus funds in the county treasury belonging to said drainage and drainage district and that the balance of such funds shall be paid to the owners of the respective tracts of land in proportion to the assessment contributions of the respective tracts, their present and former owners to said funds.

"Section 5. When the drainage and drainage district extends into more. than one county the same petition shall be filed in each county and the boards of the respective counties shall act conjointly in fixing the time and place of hearing and in hearing and determining the petition and in ordering payments pursuant to Section 4 hereof, and notice of the hearing shall be mailed to each landowner as provided in Section 2 hereof and shall be published in the official newspapers of each county as provided in Section 2.

"Section 6. The abandonment and abolishment of any drainage, drainage district and its works, as herein provided, shall not affect the obligation or validity of any assessments theretofore made against any of the lands involved, nor the lien of such assessments, which shall be collected, enforced and applied in the same manner as if no abandonment or abolishment had taken place.

"Section 7. Any person deeming himself aggrieved by any order or determination of the board or boards of county commissioners may perfect an appeal to the Circuit Court of any county in which the drainage or portion thereof is located in the manner provided in Section 8469 of the South Dakota Code of 1919 or Section 61.1013 of the South Dakota Code of 1939 and the Circuit Court shall hear and determine the matter de novo."

Purporting to act under the provisions of the above law, petitioners filed with the county commissioners of Minnehaha County on March 19, 1945, a petition stating they owned more than three-fourths of all the lands affected by Minnehaha County drainage ditch No. 1 and 2 and asked for the abandonment of such drainage district and its works. Attached to the petition and made a part thereof is a list alleged in the petition as giving the names and last known post office address of all of the owners of all of the lands affected by such drainage and theretofore assessed for its construction or maintenance. This list attached and made a part of the petition sets forth the acreage of each tract involved with the exception of the acreage of lots and blocks located principally in the city of Sioux Falls. The petition, together with the attached list made a part thereof, discloses that with the exception of the lots and blocks in Sioux Falls, there were 15726.61 acres affected by the drainage and theretofore assessed for its construction or maintenance. According to the acreage as set forth in the petition and the attached list the petition is signed by purported owners of 11862.41 acres. Following the filing of the petition the county commissioners failed or neglected to fix a time for hearing upon the petition and and thereafter several of the petitioners proceeded in circuit court in mandamus to com-

pel the commissioners to fix a time for hearing. Before the return date in the mandamus proceeding the commissioners did fix a day for hearing on the petition and gave notice thereof. Thereafter and before the time fixed for hearing on the petition the respondents in this proceeding, the City of Sioux Falls and the Great Northern Railway Company, had issued by the circuit court of Minnehaha County an alternative writ of prohibition which prohibited the holding of the hearing upon the petition. The question raised in the prohibition proceeding was the constitutionality of Ch. 290, Laws of 1939, which was finally determined by this court in the case of Great Northern Railway Company v. Graff, 71 S. D. 595, 28 N. W.2d 77. Following the decision in the prohibition action the county commissioners proceeded to a hearing upon the petition and on July 29, 1947, the commissioners denied the petition for the abandonment of the drainage district. The petitioners for abandonment appealed to the circuit court of Minnehaha County and the City of Sioux Falls and the Great Northern Railway Company were granted leave to intervene in the appeal. The circuit court dismissed the appeal for the reason as found by the trial court, "* * * that the petition for abandonment of Drainage Ditch No. 1 and 2, filed with the County Auditor of Minnehaha County, South Dakota, March 19, 1945, was not signed by persons owning more than three-fourths of all of the lands affected by said Drainage Ditch No. 1 and 2, and was insufficient to confer upon the Board of County Commissioners of said Minnehaha County jurisdiction of the subject matter of said proceeding * * *". The petitioners have appealed to this court from the order of dismissal.

 It appears that when respondents were permitted to intervene upon the appeal taken by the petitioners to circuit court that respondents first filed in the proceedings complaints in intervention which purported to raise an issue upon the merits of the abandonment of the ditch. Thereafter respondents filed their motion to dismiss the appeal because of the insufficiency of the petition. Appellant's first contention is that by raising the merits of the abandon-

ment in the complaint in intervention respondents have estopped themselves from objecting to the insufficiency of the petition. This contention cannot be sustained. The statute provides for the requisites of the petition and a compliance therewith is essential to the jurisdiction of the county board to proceed with or consider the question of abandonment. Gooder v. Rudd et al., 38 S. D. 197, 160 N. W. 808; Klaudt et al v. City of Menno et al, 72 S. D. 1, 28 N. W.2d 876. It is the petition which gives the board the jurisdiction to act and whether or not the board does have such jurisdiction is dependent upon the petition and not upon any acts of the interveners. Jurisdiction of the County Board to consider the question of abandonment cannot be conferred either by estoppel or by waiver. Town of Wayne v. Caldwell, 1 S. D. 483, 47 N. W. 547, 36 Am. St. Rep. 750; Nelson v. Ladd, 4 S. D. 1, 54 N. W. 809; Lewis v. St. Paul, M. & M. Ry. Co., 5 S. D. 148, 58 N. W. 580; Egan v. Rounds 52 S. D. 139, 216 N. W. 878; Beresford Independent School Dist. v. Fletcher, 66 S. D. 500, 287 N. W. 497; 14 Am. Jur., Courts, Sec. 184.

We may concede for the purposes of this opinion that the mandamus proceeding brought by petitioners and the proceeding in prohibition brought by the respondents and above referred to, are established as facts of record in this case. It is clear, we believe, that the mandamus proceeding brought by the petitioners against the board of county commissioners was not binding upon these respondents who were not parties to that proceeding and had no notice thereof. The prohibition proceeding went only so far as to question the constitutionality of the said Ch. 290, Laws of 1939 and no question of the jurisdiction of the county board because of the insufficiency of the petition was raised or presented in that proceeding. We are satisfied, apart from all other considerations, that no estoppel could be predicated upon either of these proceedings which would deny to the respondents their right to question the sufficiency of the petition nor has there been any determination of the question binding upon respondents. In this connection we refer to a further contention made by appellants

to the effect that in fixing the time for hearing the board of county commissioners entered an order from which an appeal might be taken under the provisions of Section 7 of the Act and that the failure of respondents to appeal from this order fixing the time and place for hearing constitutes a waiver of any right to thereafter question the sufficiency of the petition. Entirely apart from our above holding that jurisdiction in this proceeding cannot be conferred upon the county board by waiver, we think it entirely clear from a reading of the Act that such defense or objection may be, and as an orderly procedure should be, presented to the commissioners at the original hearing, which was the procedure followed by respondents in this case. Section 3 of the Act provides:

"At such hearing any person interested may appear and be heard; * * *."

There is no limitation in the act upon the scope or extent of the right of an interested person to appear and be heard and certainly the right to be heard on the sufficiency of the petition is an important right and one which we believe the Legislature contemplated should be given consideration at the hearing before the board as indicated by said Section 3.

The trial court held that the petition on its face failed to show the required number of signers. Respondents point out several groups of signatures attached to the petition which they contend are invalid and support the holding of the trial court. We refer to only one of such groups of signatures for the reason this one, in our opinion, is sufficient to sustain the conclusion reached by the court. The 1939 Act requires that the petition be signed by persons owning more than three-fourths of the land affected by the drainage. The Act further requires that notice of hearing be mailed to each owner of the land. Thus it appears, as it does generally throughout the act, that it is the owner of the land affected who must sign the petition for the abandonment of the drainage. No where in the statute is any qualification placed upon the term "owner", such as owner "* * * as appears from the records of the office of the regis-

ter of deeds * * *". See State ex rel. Curtis v. Pound, 34 S. D. 628, 150 N. W. 287, 288. The one group of signatures appearing on the petition to which we have referred to above as being decisive of this appeal presents the question whether a representative of an estate is the owner of the land belonging to the estate and, therefore, qualified to sign the petition for abandonment. It is well established that title to land of decedents does not vest in their personal representatives, but in their heirs at law or devisees, subject only to the control of the county court and possession of the executors or administrators during administration. Carter et al. v. Frahm et al., 31 S. D. 379, 141 N. W. 370; In re Guider's Estate (Talbot v. Guider), 63 S. D. 495, 260 N. W. 828; Federal Land Bank of Omaha v. Fjeerstad, 66 S. D. 429, 285 N. W. 298, 124 A. L. R. 780. Under a statute, Pol. Code, § 2212, requiring that notice of issuance of tax deed be served upon the "owner of the land", the heirs of a decedent are the owners, and where known must be served. Berry v. Howard et al., 33 S. D. 447, 146 N. W. 577. So it is generally held under statutes requiring petitions for improvements to be signed by the owners of lands affected that personal representatives, only having possession of the property for the limited purpose of administration, are not owners within the meaning of such statutes. People ex rel. Brownell v. Board of Assessors of City of Buffalo, Sup., 109 N. Y. S. 991; Mulligan v. Smith, 59 Cal. 206; Mayor of Mobile v. Dargan, 45 Ala. 310; Ahern v. Board of Improvement Dist. No. 3, 69 Ark 68, 61 S. W. 575; Warren v. Borawski et al 130 Conn. 676, 37 A.2d 364; City of Phoenix v. State ex rel Harless, 60 Ariz. 369, 137 P.2d 783, 146 A. L. R. 1255. This holding we believe is sound. Certainly the owners of land should not be subjected to improvements, which in all probability would be extensive and expensive, upon the signature of one who has only the possession of the land for a limited time and a limited purpose. The same reasoning applies to the abandonment of existing improvements.

■ As stated above the petition on its face discloses that there were at least 15726.61 acres affected by the drainage. The petition was signed by purported owners of

11862.41 acres, which is only 67.46 acres more than the required three-fourths. The petition contains a number of instances where it purports to be signed by representatives of estates. We refer specifically to the signature for the G. S. Thompson estate which in itself is sufficient to reduce the acreage of signers below that required by the 1939 Act. From the face of the petition it appears that Bertha Peterson signed the petition as the representative of the G. S. Thompson estate and not as the owner of the land concerned.

The order appealed from is affirmed.

All the Judges concur.