## City of Johnstown Annexation (No. 2)

716

*Barnhart & Nelson*, for appellants.

*Norman A. Krumenacker*, City Solicitor, for appellee.

*Englehart, Larimer & Englehart* and *Marlin B. Stephens* and *Robert E. Shahade*, for intervenors.

GRIFFITH, J., December 9, 1957.—On January 20, 1957, the Citizens Committee of Upper Yoder Township commenced advertising in two newspapers in accordance with section 502 of The Third Class City

Code of June 23, 1931, P. L. 932, as amended, 53 PS §35502, that petitions for annexation of the whole of Upper Yoder Township to the City of Johnstown would be circulated beginning February 20, 1957. On March 4, 1957, Westmont Borough passed an ordinance, which was approved by the burgess on March 6, 1957, purporting to annex a substantial area of Upper Yoder Township to the Borough of Westmont. On March 5, 1957, upon presentation to it of the above petitions, the city council of the City of Johnstown placed a bill on the calendar to annex the whole of Upper Yoder Township to the city. Section 1012 of The Third Class City Code requires at least three days to intervene between the introduction of a bill and its final passage by City Council: 53 PS §36012. Accordingly, on March 12, 1957, the city finally passed an ordinance annexing the whole of the township to the city. This ordinance was filed with the Clerk of the Court of Quarter Sessions of Cambria County on March 13, 1957. Within the period fixed by the statute, the three supervisors of the township, the tax collector and one of the auditors entered their appeal from the annexation proceedings. Two of appellants' objections go to the merits of the case, the others are techincal. We shall first consider the two objections which go to the merits.

1. Section 501 of The Third Class City Code of June 23, 1931, P. L. 932, 53 PS §35501, requires a petition to the city council signed by "three-fifths of the taxable inhabitants of such township or part thereof." Appellants contend that less than three-fifths of the taxable inhabitants of the township signed the petition.

The petition for annexation to the city was presented to the city council on March 5, 1957. In order to determine the number of taxable inhabitants in the township on that date reference was first had to

the 1957 assessment book. However, it was discovered that many names had been added to the typewritten list in the assessment book in pen and ink and it was impossible to determine whether such additions had been made before or after March 5, 1957. It was therefore decided to use the 1956 assessment book as a base and permit either party to introduce testimony which would require names to be added or deleted from the 1956 list. In Chester Annexation Case, 174 Pa. 177, the court said that the assessment book is the "best and readiest" evidence but it is not conclusive and may be modified by other evidence. . . .

1,634 persons signed the petition of taxable inhabitants and 57 additional signatures were allowed by the court nunc pro tunc, making a total of 1691. However, it appeared that the total of 1,634 signers included the names of Harold J. Fisher and Irene Fisher who signed twice, once on page 34 and again on page 68, so that there were but 1,689 valid signatures or 2.4 less than the number required. In our decree of August 12, 1957, we allowed 57 names to be added to the petition nunc pro tunc. We refused to add an additional 40 names, because, as to them, there had been no breakdown in the assessment machinery since they were actually assessed and their names readily available to the circulators of the petition. This objection must be sustained.

2. Section 501 of The Third Class City Code, supra, 53 PS §35501 also requires that the petition of three-fifths of the taxable inhabitants be "accompanied with the written consent of a majority in number and interest of property owners." Appellants contend that less than a majority of the property owners of the township signed the written consent required.

In considering the property owners' petition, the 1957 assessment book was made the basis of our inquiry since it was apparent that no names had been

added or deleted after March 5, 1957. From an examination of the assessment book for 1957, the consent of property owners to annexation and the testimony, we have made the following

### CALCULATION AS TO PROPERTY OWNERS

Number of uncontested property owners on assessment book for 1957, exclusive of exempt and publicly owned properties.　1501

(A). Additional property owners not assessed but proved in court. Appellants' figure was 38 but they now agree that St. Andrew's Church should not be added.　37

(B). Add Donald and Betty C. Koch, whose deed was dated Februray 28, 1957, acknowledged the same day and recorded May 17, 1957, since their grantor, Robert C. Kauffman, owned other real estate in the township. A deed is presumed to have been delivered on the date of the instrument and this presumption is strengthened if the date of the acknowledgement is the same as the deed: 16 Am. Jur. 657; Cover v. Manaway, 115 Pa. 338; Lewis v. Merryman, 271 Pa. 255.　1

(C). Add Sylvio and Betty Muscardelli, whose deed was dated January 8, 1957, acknowledged the same day and recorded June 19, 1957. Their grantor, Melda Wagner, owns other real estate in the township.　1

(D). Richard M. and Dorothy Butler, whose deed was dated March 2, 1957, acknowledged the same day and recorded May 17, 1957 should not be added since their grantor, Theodore Kordell, owned no other real estate in the township, so that

if their names be added, his should be re-
moved.                                              0

(E). Add Mary Chornick, the sister of
Michael Chornick.                                   1

(F). Two Eisamans own property.
Only one is assessed.                               1

(G). Number of property owners as-
sessed but exempt from taxation. This in-
cluded utilities, churches, and volunteer
fire companies.                                     9

(H). Add publicly owned properties in-
cluding City of Johnstown, the school dis-
trict, township supervisors and the re-
habilitation center.                                4
                                                 ─────
                                                  1555

Number of signatures required                     ─────
(½ of 1555 or 777½)                                778

## CALCULATION AS TO SIGNERS OF PROPERTY OWNERS' CONSENT

Signers of the property owners' consent,
as agreed upon.                                     782

1. No deduction for Harold J. and Irene
Fisher, Elizabeth Trofina and Dwight A.
and Ruth M. Rager, each of who signed
twice but were counted once only.          0

2. Robert Blough testified that there
were no deeds of record conveying real
estate to ten signers. Subsequent testi-
mony shows that four of these were prop-
erty owners, (Melnick, Keiper, Callan and
Coffey) and six were not (Andrews,
Naugle, Grandinetti, Klug, Bridgewater &
Butler). Note: The court reopened the case
and called the parties involved in this and
the next category in order to determine the

true state of facts in regard to their signatures.

Deletion      6

3. This subdivision relates to seven signers of the property owners' consent concerning whom the records in the recorder's office show that the only deeds in which they are named as grantees are deeds to them and their respective spouses as tenants by the entireties and only one tenant signed the petition. Subsequent testimony shows that in two instances the nonsigning spouse died before March 5, 1957, thus vesting sole title in the signer.

Note: The statute requires a majority in interest of owners of undivided interests to be treated as one person.

Deletion      5

4. This category included three signatures of executors and one signature of a guardian. We are satisfied that the personal representative of an estate, whether the executor or the administrator, is not the "owner" within the meaning of the annexation act, nor is the guardian. In no case was the fiduciary who signed a trustee.*

Deletion      4

---

* The signatures of three executors and one guardian on the property owners' consent are valid. The personal representative of a decedent's estate is not the owner of property within the meaning of an annexation statute (City of Phoenix v. State of Arizona ex rel. Harless, 60 Ariz. 369, 137 P. 2d 783, 146 A. L. R. 1255), nor within the meaning of a statute for petitioning for the abandonment of a drainage district (Brekke v. City of Sioux Falls, 72 S. D. 446, 36 N. W. 2d 406), nor within the meaning of an act for petitioning for the amendment of a zoning ordinance (Warren v. Borawski, 130 Conn. 676, 37 A. 2d 364), nor for the purpose of petitioning for street improvements: People ex rel. Brownell v. Board of

5. Appellants. desire to deduct Richard M. Butler, et ux., and Sylvio Muscardelli, et ux., deeds to whom were not recorded on March 5, 1957. Since the deeds were executed and acknowledged before March 5, 1957, their delivery and the passage of title before that date is presumed.

Deletion     0

6. Deduct Martha E. Berry, whose signature was by Clarence C. Barry, attorney. The testimony shows that no power of attorney is on record and none was offered.

Deletion     1

Total deletions     16

Valid signatures on property owners' consent     766

Assessors of City of Buffalo, 127 App. Div. 581, 109 N. Y. S. 991.

Although the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.101 et seq., gave a personal representative the right to take possession of the real estate of his decedent not occupied by an heir, section 501, and to sell real property not specifically devised, section 541, nevertheless title to a decedent's real estate still passes to his heir at his death as heretofore, section 104. In the three estates with which we are here concerned, there was no showing that the heirs did not occupy the real estate devised to them. The interest of decedent vested in his heirs at the moment of his death subject only to his debts, if any. Fullerton v. Fullerton, 89 D. & C. 607. While an executor's exercise of his powers may affect the devisee's title, until such powers are exercised, title remains in the devisee who, if in possession, may even convey title where the executor has not obtained an order of court: Brown v. Bailey, 84 D. & C. 269.

"A guardian does not have legal title to the ward's estate, title remaining in the ward; . . .": 39 C. J. S. 116. In Provident Trust Company of Philadelphia Case, 346 Pa. 37, 39, the court said, ". . . a guardian, unlike a trustee, does not take legal title to the property of the beneficiary . . .; the ward, not the guardian, is the owner of the property."

Number of signatures required on prop-
erty owners' consent     788
  Number of valid signatures     766
_____

Number of signatures less than required     12

Appellee contends that the publicly owned proper-
ties (4) and the exempt properties (9) or a total of
13 properties should not be counted as property own-
ers. Even though they be removed from the list thus
reducing the total from 1555 to 1542, 772 signatures
would be required to constitute a majority and only
766 can be considered valid.

This objection must be sustained.

Since the appeal must be sustained and the annexa-
tion proceedings dismissed on account of appellants
first two objections which go to the merits, it will not
be necessary to discuss at great length each of their
numerous technical objections, none of which are
meritorious.

. 3. Neither the petition of the taxable inhabitants
nor the consent of the property owners was verified.

In 2 Anderson Pa. Civ. Pract. 48, we find the fol-
lowing:

"Decisions under the Act of April 9, 1915, P. L. 72,
§1, 12 PS §514, holding that a defective verification
was fatal and non-amendable, are contrary to the
policy of the procedural rule which permits amend-
ments, see Rule 1033, and comment, and should not be
regarded as authority."

That act provided that: "A judge . . . shall not,
in any matter . . . before him . . . consider any pe-
tition . . . alleging any matter of fact, unless . . .
verified. . . ."

Pa. R. C. P. 1024 applies only to pleadings.

Pa. R. C. P. 206 requires petitions and answers
containing allegations of fact to be verified by affi-
davit.

The error in appellants' contention is that the petitions referred to in the statute and in rules of civil procedure relate to petitions "before" the court. In this case, the petitions for annexation were not petitions to the court but the city council of the City of Johnstown and there is no statute or rule of civil procedure which requires that such petitions be verified. Prangley v. Diehm, 51 D. & C. 108, and Taylor Township Election, 79 D. & C. 193, are not applicable.

4. Section 502 of The Third Class City Code, as amended, 53 PS §35502, provides that:

"All such petitions shall be accompanied by a plot or plots of the territory to be annexed, showing all streets and highways, municipal or township improvements and public buildings."

We may disregard without further comment appellants' contention that the 47 streets in the township are not "shown" on the plot accompanying the petition because they are not "named". Such streets are shown by lines indicating their proper width, length, bearings and precise location. The statute does not require that the names of the streets and highways be given.

Appellants suggest some impropriety because the plot attached to the petition for annexation also shows streets which have been dedicated by the property owners but have never been accepted by the municipality. There is no complaint on this ground by the annexing municipality and we cannot believe that the showing of more than was required by the statute would in any way invalidate the proceedings. The case of Mountainville Election District Annexation, 304 Pa. 559, 564, is not authority for the proposition that dedicated streets must not be shown but only for the rule that public streets shall be shown.

Two short streets known as Americus Street and Schenkelview Drive, otherwise known as Mellott Street, are not indicated on the plot. Obviously this

omission occurred because these short streets had not been placed on the official township map until after the annexation ordinance had been passed by the city council. Such minor omissions will not invalidate the proceedings: Mountaindale Election District Annexation case, supra.

Appellants think that the State Rehabilitation Center which is being erected by the General State Authority should have been shown on the plot. The testimony shows that on March 5, 1957, no building had been erected on the site but only a footer and foundation. The purpose of showing public buildings is to inform the annexing municipality as to what buildings it will be asked to accept and maintain as such. The State Rehabilitation Center, when erected, will not be such a building.

5. Appellants and intervenor, Borough of Westmont, believe that the city's annexation ordinance was invalid because it was filed with the clerk of the court of quarter sessions on March 13, 1957, the day following its final enactment by the city council, and therefore before the effective date of the ordinance, since a period of 10 days must elapse after the passage of a city ordinance before its provisions go into effect: Section 1014, as renumbered of The Third Class City Code, as amended, 53 PS §36014.

This section provided that city ordinances shall take effect in 10 days "unless otherwise provided." It is apparent, however, that, in respect to the ordinance in question, The Third Class City Code does "otherwise provide". Section 503 of the code, 53 PS §35503, provides for the filing of the annexation ordinance with the clerk of the court of quarter sessions. Section 504 of the code, 53 PS §35504, provides that the annexation ordinance shall be "finally conclusive" 30 days after its filing unless an appeal be taken within said 30 days. As a result, annexation ordinances be-

come effective not "10 days after their passage" but "30 days after the filing of said annexation ordinance." This question was determined adversely to appellants' contention in Centerport Annexation Ordinance, 30 Mun. L. R. 121 (Berks County), and in Derry Borough Annexation, 20 Westmoreland 56. Of course, an appeal having been taken, the effective date of the ordinance must await the final determination of this court or the Supreme Court: Section 505 of The Third Class City Code, 53 PS §35505. This objection must, therefore, be dismissed.

6. Appellants suggest that certain persons signed both the petition for annexation to the City of Johnstown and also a petition for annexation of parts of the township to the Borough of Westmont and contend that such duplicate signatures should be stricken from this petition because the real desire of the signer is not ascertainable since he expressed contradictory opinions. No one has petitioned the court for leave to withdraw his name from the annexation petition. In order to be permitted to withdraw a signer must: (1) Petition the court for leave to withdraw; (2) appear in person in court; (3) show that he was induced to sign by fraud; and (4) obtain leave of court to withdraw his signature: Lerten Appeal, 168 Pa. Superior Ct. 516. It may well be that those who signed both petitions expressed their first preference to be annexed to the City of Johnstown and if that were not possible then to be annexed to the Borough of Westmont, rather than to remain as a part of the township. This objection has no merit.

7. At the first hearing on the appeal, we understood that the intervenor, Borough of Westmont, contended that the city's annexation was invalid because the annexing ordinance of the Borough of Westmont had been first adopted. We believe this contention to be without merit.

Advertising of notice of the intention of the proponents of annexation to the city to circulate petitions was begun on January 20, 1957. This was long before any move had been made to annex portions of the township to the Borough of Westmont. The Borough Code does not require advertising of intention to circulate petitions for annexation where a borough is the annexing municipality. There are a number of different statutes which provide different methods and different procedures for the annexation of townships or portions of townships to cities or boroughs. We believe that all of these statutes are in pari materia since their general purpose is the same. Consequently, when an annexation proceeding is pending, which will come before any one of these bodies, none of the other bodies can interfere with the proceedings after the first formally prescribed steps have been taken: Dupont's Appeal, 56 Pitts. L. J. 325; Town of Greenfield v. City of Milwaukee, 259 Wis. 77, 47 N. W. 2d 292; State of Iowa ex rel. Mercer v. Incorporated Town of Crestwood, 248 Iowa 627, 80 N. W. 2d 489. In the Milwaukee case the court said: ". . . it is the first public procedural step in the method of annexation prescribed that controls" in determining which proceeding takes precedence over the other.

If the steps leading up to the annexation of the entire township by the city had been valid, we would not need to concern ourselves with the annexation proceedings of the Borough of Westmont.

8. The intervenor, Borough of Westmont, contends that the city's annexation of the township was invalid because notice of the circulation of the petition was not advertised in the Cambria County Legal Journal.

Section 502 of The Third Class City Code, as amended, 53 PS §35502, provides that notice be given by advertisement, "in two newspapers published in or circulated throughout the territory to be annexed".

This was done. However, the intervenor calls our attention to section 109, as amended, 53 PS §35109, which provides in part as follows:

"When such notice relates to any proceeding or matter *in any court* . . . such notice shall also . . . be published in the legal newspaper, if any, designated by the rules of court of the proper county . . . *unless such publication be dispensed with by special order of court* . . . (Italics supplied.)

In this case, a special order of court was made on March 8, 1957, dispensing with publication in the Cambria County Legal Journal. The intervenor believes that this nunc pro tunc order came too late. We do not agree. In Mertz v. Mertz, 1 D. & C. 751, the Dauphin County Court had before it the Act of April 5, 1917, P. L. 49, in the consideration of a case in which a notice of a divorce proceeding had not been published in the legal periodical. That act provided that such publication was required "unless dispensed with by special order of the court." The court said, "this Act of Assembly provides that the court may dispense with the publication by special order. Therefore, to prevent any confusion or hardship the court will dispense with the publication in the Dauphin County Reporter in every case in which proceedings have *heretofore* been awarded." (Italics supplied).

Moreover, the notice required by section 109 of The Third Class City Code is to be published in the legal newspaper only when it relates to a proceeding "in any court". The petition here was not a petition to the court but a petition to the city council of the annexing body. Notice of intention to circulate such a petition does not relate "to any proceeding or matter in any court" and on the principle of inclusio unius exclusio alterius, advertisements, other than those specifically required to be published in the legal periodical, would need to be published in newspapers of

general circulation only: Bloom v. City of Scranton, 64 D. & C. 358, 371.

This matter received extensive publicity both in the press and on the air and was vigorously contested. Certainly actual notice was had by all who desired to object. Under these circumstances, the objection is highly technical, without merit, and must be dismissed: Incorporation of Borough of Edgewood, 130 Pa. 348, 353.

The record shows that there were nearly enough signatures on the taxable inhabitants' petition and also the property owners' consent to have validated the annexation. Unfortunately for the proponents of annexation, when the court permitted the addition of signatures of unassessed taxable inhabitants, they were able to add but 57 names to their petition. Moreover, a fair consideration of the testimony made it necessary for appellee to concede that there were only 782 valid signatures on the property owners' consent and that there were 1,545 property owners in the township. In applying the law to the testimony, we were compelled: (1) To find that 16 of the 782 signatures were invalid, thus leaving but 766 valid signatures; and (2) to add 10 names to the property owners' list of 1,545 as admitted by appellees, thus making a total of 1,555,, which would require the consent of 778 owners. It might well have been apparent to those favoring annexation before the property owners' consent was presented to the city council that their margin of safety was dangerously insecure. Even if there were but 1,545 property owners, 773 signatures would have been required to constitute a majority and 782, the number for which they finally contended, would have allowed a margin of only 9. Certainly, it might have been anticipated that at least a few persons owned property which had not been placed in assessment and that some of the signers were not actually property owners. However, it is always easier to more

accurately appraise a situation after the event. The proponents of annexation may well be commended for their pioneering efforts to obtain a more integrated community.

While from the evidence in this case we have no choice but to find that the requirements of the annexation statute have not been fulfilled, yet it may not be inappropriate to say that it may well be a matter for regret that this first step in an effort to create a metropolitan legal community in the Greater Johnstown and Conemaugh Valley area has met with initial failure. The city and the smaller political subdivisions in the area are already identified with each other socially and economically. Legal and political identification is, as yet, unaccomplished. Metropolitan areas in all parts of the country suffer from an excess of governmental units and from a lack of legal machinery flexible enough to keep up with urban growth. Such areas provide a new and different sort of frontier in American life: 105 University of Pa. Law Review 439. The early Americans met the challenges of their frontier and we are faced with the challenge of meeting ours. How we solve the problem will, in a large measure, determine the future pattern of our lives in this area. Let us hope our approach will be with an open and not a provincial mind, with a vision of a larger future and with a desire to improve the entire metropolitan area, which, in the long run, cannot do otherwise than benefit each individual community.

We must, therefore, enter the following

### Decree

And now, December 9, 1957, after argument and upon due consideration, the appeal is sustained and the proceedings seeking to annex the whole of Upper Yoder Township to the City of Johnstown are dismissed.